There have been presented thirty-three petitions by thirty-three individuals in which the same facts have been pleaded. For convenience sake, only one petition will be noticed and the determination herein expressed will apply in each of the other proceedings.
Markus says that he "was heretofore imprisoned in the *Page 514 
county jail at Hackensack, New Jersey," as he is informed and believes, and that such imprisonment was based upon a complaint wherein he was charged with keeping a disorderly house, upon which complaint a warrant was issued, and he was "brought before the first criminal judicial district court of the county of Bergen and held in the sum of $8,000 bail, conditioned to appear and answer the charge made against him." That such bail was given, and that the petitioner "is now in the custody of the said sheriff of the county of Bergen by virtue of the said bond, and restrained of his liberty within the true meaning of an act of the State of New Jersey entitled `An act for the preventing the injury of illegal confinement, and better securing the liberty of the people.'" 2 Comp. Stat. p. 2638. In short, that he was arrested and is now at large on bail.
Upon learning that bail had been given, I announced to counsel that it appeared he was not "restrained of his liberty" within the meaning of the above-entitled act. Applying counsel then briefly described their views, and being unable to persuade me thereto secured permission to submit a memorandum of law. That memorandum has been received and examined. It is based upon a consideration of the definition of restraint, the fifty-sixth section of the act, and the applicability thereof in view of the wording of the recognizance into which the petitioner had been obliged to enter.
Habeas corpus has been described as "the great and efficacious writ, in all manner of illegal confinement," and that it is "directed to the person detaining another and commanding him to produce the body of the prisoner." 3 Blacks. [*]131. It is, of course, a high prerogative writ which is made a writ of right by our statute. It is an important method of protecting the liberty of the citizens and is always allowed in a proper cause, which is one where it is made to appear that anyone is illegally restrained of that liberty by another, under any pretense whatsoever. I have never known of an instance, however, where the writ was allowed unless the person in whose behalf it is granted is actually detained *Page 515 
by another, either under pretended process of law or otherwise. In this state I do not know of any precedent where any court has been petitioned for such a writ where no one was actually detained, in the physical sense, except the case of Ryan v.State, 7 N.J.L.J. 308. But there, the writ was dismissed because, while the subject thereof was in confinement at the time it was issued, he had been discharged by the trial court under the original recognizance under which he had previously been admitted to bail. This, of course, is almost exactly the case now under consideration. If the prisoner in that case was refusedhabeas corpus because he had been restored to his liberty under bail originally put in, pending trial, all the more the present petitioner should not be allowed a writ, because he has gained his freedom by the usual means and has not been interfered with by the criminal authorities since.
In many other jurisdictions a similar result has been reached. In the case of Stallings v. Splain, 253 U.S. 339, the petitioner contested the legality of the warrant whereby he was arrested and immediately sought a writ of habeas corpus but gave bail in the sum of $2,000. This bail was the ordinary recognizance in a removal proceeding and was in addition to that furnished in the habeas corpus proceeding pending the determination thereof. Mr. Justice Brandeis, writing the opinion of the supreme court, says:
"He ceased, therefore, to be in the position ordinarily occupied by one who is contesting the validity of his detention, and who has been released on bail pending the habeas corpus
proceeding. Sibray v. United States, 185 Fed. Rep. 401.
Stalling's position was thereafter no better than if he had applied for the writ after he had given bail. It is well settled that under such circumstances a petitioner is not entitled to be discharged on habeas corpus. Respublica v. Arnold, 3 Yeates263; Dodge's Case, 6 Mart. (La.) 569; State v. Buyck, 3S.C.L. (1 Brev.) 460. Being no longer under actual restraint within the District of Columbia, he was not entitled to the writ of habeas corpus. Wales v. Whitney, 114 U.S. 564." *Page 516 
In the case last cited by the supreme court, a member of the U.S. Navy was served by the secretary of the navy with charges and specifications, was notified of the convening of a general court martial and apprised that the judge advocate thereof would subpoena any witnesses the accused might require for his defense. The order closed with the following language:
"You are hereby placed under arrest, and you will confine yourself to the limits of the city of Washington."
Counsel in that case, like those in the case at bar, argued that the last part of the order of arrest just quoted, restrained the naval man of his liberty to go and come as he pleased. It was pointed out that in the naval or the land forces of the United States, one who becomes subject to the regulations thereof must submit to a military arrest, which is very different from an arrest made under civil or criminal process. In the case of an officer, he is simply notified that he is under arrest, whereupon he forfeits, for the time being at least, the right to execute the functions of his office, to wear side arms, and some of his other privileges. It does not mean that he is confined in a place designed to hold prisoners, or that any guard is placed over him to prevent his moving. In short, he is in almost the status of a civilian who has been discharged on bail.
The principal point made on behalf of the petitioner is, that there is a restraint upon his personal liberty, because the recognizance into which he has entered requires him not only to appear, but, in addition, "not depart the said court without leave." Dealing with a similar point raised by Wales, the supreme court said:
"Something more than moral restraint is necessary to make a case for habeas corpus. There must be actual confinement or the present means of enforcing it. The class of cases in which a sheriff or other officer, with a writ in his hands for the arrest of a person whom he is required to take into custody, to whom the person to be arrested submits without force being applied, comes under this definition. The officer *Page 517 
has the authority to arrest and the power to enforce it. If the party named in the writ resists or attempts to resist, the officer can summon bystanders to his assistance and may himself use personal violence. Here the force is imminent and the party is in presence of it. It is physical power which controls him, though not called into demonstrative action.
"It is said in argument that such is the power exercised over the appellant under the order of the secretary of the navy. But this is, we think, a mistake. If Dr. Wales had chosen to disobey this order, he had nothing to do but take the next of any subsequent train from the city and leave it. There was no one at hand to hinder him. And although it is said that a file of marines or some proper officer could have been sent to arrest and bring him back, this could only be done by another order of the secretary, and would be another arrest, and a real imprisonment under another and distinct order. Here would be a real restaint of liberty, quite different from the first. The fear of this later proceeding, which may or may not keep Dr. Wales within the limits of the city, is a moral restraint which concerns his own convenience, and in regard to which he exercises his own will."
It will be borne in mind that Wales had been ordered to remain within the limits of the city of Washington. That was a much narrower limitation upon his movements than those under which the petitioner lies. In each instance, it is what the supreme court denominates a "moral restraint." It is something which the citizen may obey or ignore as he personally chooses. In either event, if he is obliged by force to return to the place of his original arrest and such force is unlawful, he may then test the legality of his restraint under the second proceeding of which he would complain.
It is not without significance that the proposed order for the writ of habeas corpus provides that the writ issue "according to the prayer of said petition." Turning to the prayer of the petition it is found to be in the following language: "Petitioner, therefore, prays that he may be brought *Page 518 
before your honor, by virtue of a writ of habeas corpus, to the end that your petitioner may be discharged from custody." It will be observed that there is no prayer that the writ should be directed to anyone. Upon whom shall it be served? Not upon the sheriff, because the body of the petitioner is now beyond his control. Should it be served upon the petitioner's bail, in whose friendly custody he may be assumed to be? The supreme court of Pennsylvania thought not in the case of Respublica v. Arnold,supra, which was cited by the supreme court of the United States both in the Wales Case, supra, and the Stallings Case, supra, and relied upon by that tribunal, and certainly in all commen sense it should not be. It is upon the request and desire of a defendant that he is admitted to bail, and for the very purpose of relieving him from confinement so that he may be at large. It is only to relieve against such confinement or restraint that resort should be had to the writ. Where one against whom a complaint has been lodged has been able to secure his liberation on bail he can with perfect convenience, and should, try out the legality of his arrest in the forum especially provided for that purpose, and there this defendant may have determined those questions which he has attempted to raise in this petition.
A further answer to this argument submitted on behalf of the petitioner grows out of the chaos that would result if his prayer was granted. It would require the members of this court, or any other court with the power to review the legality of every arrest in which the prisoner might choose so to act. It would thus substitute for the regularly constituted courts charged with the duty of determining the guilt or innocence of those under indictment, an entirely different tribunal and one that was never contemplated by our legislature, because every recognizance, if properly prepared, undertakes to place the defendant under the same condition as that of which the petitioner complains. As far back as the case of State v. Stout, 11 N.J. Law 124, the form of our recognizance had become fixed. In that case Chief-Justice Ewing said, at page 133: *Page 519 
"A recognizance in general binds to three particulars —first, to appear to answer either a specified charge or to such matters as may be objected; second, to stand to and abide the judgment of the court; and third, not to depart without the leave of the court. And each of these particulars is distinct and independent. The party is not to depart until discharged, although no indictment should be found against him by the grand jury, or although he be tried and a verdict of acquittal be rendered. If no trial is requisite, an order of discharge is regularly made by the court; of which precedents may be found inCrown Cir. Comp. 79 and 4 Chit. 55. If a trial results in a verdict of not guilty, the judgment of the court contains a discharge, which in our practice is always supposed to be entered, although not always actually done. 4 Chit. 384."
The same jurist in the same case, at page 131, said:
"I have thus far examined the practice in the English courts, rather with a view to compare it with our own, than because I have deemed such examination to be necessary; for if in a matter of this kind, there has been in this court an ancient course of practice, our duty is, in my opinion, to adhere to and pursue it."
If the present form by which a defendant is held to bail had become fixed by "an ancient course of practice" one hundred years ago, no departure should be made from it except upon the most weighty reasons and to meet changes which might require it, if any such could be shown to exist, which are not shown in this application, for the reasons already noticed.
The application for the writ will be denied. *Page 520