On August 3d 1929, a petition was submitted wherein it was alleged that Harry H. Weinberger was "imprisoned and restrained of his liberty by the sheriff of the county of Passaic, Thomas Carless, at the common jail of the county of Passaic, *Page 126 
or in the custody of the said Thomas Carless, sheriff of the county of Passaic * * *." It was also set forth that the cause or pretense of said confinement, so far as could be learned, were two indictments, and that the confinement was illegal because the court of quarter sessions had fixed the bail in the sum of $250,000, in violation of article 1, section 15, of the constitution of the State of New Jersey, which provides: "Excessive bail shall not be required, excessive fines shall not be imposed and cruel and unusual punishment shall not be inflicted."
The petition then contained the common averments with prayers for the issuance of a writ of habeas corpus and ad interim
release from confinement under such security as might be fixed by this court. There was attached to the petition a copy of a bench warrant issued by the judgment of the court of quarter sessions. The petition was verified by the affidavit of a brother of the subject of the writ.
At the time this petition was presented I was at a distance of fifty miles by the quickest route from the county jail of Passaic county. I learned from counsel that so much of the petition as alleged the actual confinement was not true but that he was then upon his way to the court house in Paterson for the purpose of surrendering his body to the sheriff so that the latter might then and there execute the above-mentioned warrant. When the writ was actually allowed and the allocatur signed, it was a quarter before ten on Saturday morning, and it was represented to me that the office of the sheriff is customarily closed at noon on Saturdays. It is highly important to make this statement because it is only common fairness to show that the court was in no way misled or imposed upon as to the condition of the subject of the writ and that I did what I did with a full knowledge of this fact. Feeling then, as I feel now, that the amount of bail required was excessive, and fearing that an injustice might occur unless immediate relief was afforded, and basing my decision to allow the writ in part on a reason that will presently be explained, I allowed the writ although I was perfectly aware that there was not at that moment any imprisonment *Page 127 
of Weinberger but that an arrest was imminent. While I have just said that I still think the bail was fixed at a figure too great, I realize that this much of the proceeding still remains partly unargued and I neither finally so decide nor will I foreclose counsel for the respondent from presenting such argument as may be designed to change my mind in this respect.
The only point which has been fully argued and not disposed of relates to the propriety or impropriety of allowing the writ to issue in advance of the actual arrest of the subject thereof. In this respect I feel that I have undoubtedly fallen into legal error. This is how it occurred: In the very recent case of In reMarkus, 104 N.J. Eq. 513, I discussed the decision of the supreme court of the United States in Wales v. Whitney,114 U.S. 564. I quoted from this latter case as follows:
"Something more than moral restraint is necessary to make a case of habeas corpus. There must be actual confinement or the present means of enforcing it. The class of cases in which a sheriff or other officer, with a writ in his hands for the arrest of a person whom he is required to take into custody, to whom the person to be arrested submits without force being applied, comes under this definition. The officer has the authority to arrest and the power to enforce it. If the party named in the writ resists or attempts to resist, the officer can summon bystanders to his assistance and may himself use personal violence. Here the force is imminent and the party is in presence of it. It is physical power which controls him, though not called into demonstrative action."
When counsel applied for the Weinberger writ there recurred to my mind the sentence just set out, namely: "There must be actual confinement or the present means of enforcing it." The clause which I have italicized misled me so that I considered the United States supreme court to have held that an actual threat of detention, which would in all probability be turned into an actual confinement, was sufficient for the allowance of a writ ofhabeas corpus. In this, as I have already said, I now believe I was mistaken. *Page 128 
Blackstone says (Book III, star page 131): "But the great and efficacious writ, in all manner of illegal confinement, is that of habeas corpus ad subjiciendum, directed to the person detaining another, and commanding him to produce the body of the prisoner * * *." It will be observed that this great commentator lays it down that the writ is to relieve against illegal "confinement," that it is to be "directed to the person detaining another," and that it is to be used for "commanding him [the detainer] to produce the body of the prisoner." I cannot make this language any plainer. And see 29 C.J. 21 and12 R.C.L. 1187, and cases collected. It would seem common sense that where one has not yet been deprived of his freedom but where every probability indicates that this calamity is about to befall him under circumstances that would render his apprehension an illegal interference with that freedom, and the danger is immediate, the court ought to afford protection from the threatened wrong. Courts of equity relieve against threatened invasion of property rights; courts of criminal law interfere to prevent a threatened breach of the peace by binding over to keep the same. The courts of law prevent the threatened removal of property which might preclude the satisfaction of a judgment which has not yet even been procured. The reasons underlying the rule that one immediately threatened with the loss of the far more sacred right of liberty, in an illegal manner, should be obliged to await the commission of the wrong before relief may be sought, are too subtle and refined for my mind.
However, when, as here, a defendant or respondent insists upon an exact, literal, technical decision, the duty of the court is to administer the law as it exists and is expressed in the principles and rules which have been laid down to bind it. It is trite to say that any decision required by those principles and rules, no matter how repugnant to the personal views of the court, is preferable to the intolerable and dangerous confusion that would arise if each judge should be permitted to direct what he considers substantial justice without regard to the dictates of the law. No man would be safe in *Page 129 
any of his rights. Among the rules just mentioned are those of practice, and where such a rule has been established it is quite as important that it should be followed as any rule or principle of substantive law.
There is presented no case where this ancient writ has ever been allowed except for the relief of one who has actually been brought within the power of another without legal warrant, and my own research has failed to reveal one. On the contrary, through all the cases with which I am familiar there runs the rule thathabeas corpus is not available unless there is actual detention of another illegally. Mr. Justice Dixon, a most eminent authority on practice, so decided in the case of Ryan v. State, 7N.J.L.J. 308, where he allowed a writ while the petitioner was incarcerated, but discharged it upon the return, because in the meantime the applicant had been released from confinement on the security of bail which he had previously given before the arrest of which he had complained.
In State v. Cheeseman, 5 N.J. Law *545, Mr. Justice Southard, in discussing the office of this kind of writ, says:
"It is for the relief of the prisoner, and the prisoner
only. It is to inquire why the liberty of the citizen is restrained. This, then, is its legitimate and only object — to relieve from restraint and imprisonment. Wherever there is no imprisonment there is no ground for the writ of habeas corpus."
It is true that there he was engaged in a consideration of the applicability of the writ to secure the custody of a ward where the ward preferred to remain with his parent. The necessary implication of his investigation of the elements of a proceeding such as the one at bar, conforming as they do to all the cases and to the definition quoted from Blackstone, is that it is prematurely initiated before the person in whose behalf it is brought has become a prisoner.
In my opinion in the Markus Case, supra, I said:
"I have never known of an instance, however, where the writ was allowed unless the person in whose behalf it is granted is actually detained by another, either under pretended process of law or otherwise." *Page 130 
In that case I was dealing with a situation where the applicant attempted to raise questions involving the legality of his arrest but who I held was not entitled to the writ because he had given bail before filing his petition and consequently was neither in confinement nor threatened with confinement except as his guilt might be determined subsequently in a court of competent jurisdiction.
In fact, I agree with counsel for the respondent that the very language quoted above from Wales v. Whitney, supra, convinces me that I was in error in allowing this writ at the time I did. It will be recalled that I have said I thought this case came within the alternative of the statement in the Wales Case, in that there was a present means of enforcing the confinement of Weinberger when this writ was allowed. That, of course, is not what Mr. Justice Miller meant. He was dealing with that class of cases, upon which the various jurisdictions are divided, where one against whom a warrant has issued voluntarily surrenders himself to the officer charged with the execution of the process, although no physical force of any kind is applied to the prisoner and although he is not actually taken to the customary place of confinement. He is then in the immediate presence of the arresting officer who need not actually have extended his hand or, as the supreme court says, "summon bystanders to his assistance." The sheriff's representative says that Weinberger actually surrendered at eleven o'clock on August 3d 1929, and as the writ had been allowed seventy-five minutes before that time, I must technically decide that he was not restrained of his liberty upon the issuing of the writ, and, therefore, it must be discharged.
Two points are made by Mr. Weinberger which I can find to be of no avail on behalf of his argument that the writ should not be discharged: First, he says that the maxim should be applied that the law does not recognize fractions of a day. There can be no such application. The question under consideration is whether or not there was any restraint of his liberty at the time the application was made for the writ, and if the law is as I think it is, it would make no difference *Page 131 
whether one hour intervened or twenty-four hours. He also says that he telephoned to the sheriff at nine-thirty on the morning of August 3d, saying that he was on his way to give himself into the officer's hands, and that, in fact, that operated as a surrender at that moment. I cannot think so. An offer or a promise to perform an act is not the performance thereof. Many things might have interfered with the performance, and it is sufficient to say that he might have changed his mind. It was a Saturday in the summertime when vacations cause so much irregularity in our ordinary habits and routine. Upon that afternoon or the following day the chances of any relief would have been somewhat precarious. The promise having been entirely voluntary, it is not certain what the promisor might do in these circumstances, if he learned before the surrender that this writ had been denied.
My attention has been called to the case of Ex parte Foster, which may be found in 60 L.R.A. 631, a decision of the Texas court of criminal appeals. There an arrest had actually been made by the sheriff who had, however, taken the amazing action of releasing the prisoner in his own custody within the limits of the city of Houston in order to secure a writ. This was held a sufficient control of the prisoner to warrant the allowance of a writ of habeas corpus. The court decided that this brought the case within the rule of another Texas decision by the same court (Ex parte Snodgrass, 65 S.W. Rep. 1061), where a majority of the same court had said:
"We deem it unnecessary to enter into a long discussion of these articles, but suffice it to say that any character or kind of restraint that precludes an absolute and perfect freedom of action on the part of the relator authorizes such relator to make application to this court for release from said restraint."
I do not think it necessary "to enter into a long discussion," explaining why I feel that I should follow the rule adopted by the supreme court of the United States rather than the one laid down in the case in hand. *Page 132 
In consequence, no argument will be necessary as to the reasonableness of the bail fixed by the quarter sessions. However, being still of the opinion that it is unjustified in amount and in order that my complete view may be known, I now announce that upon the making of the order of discharge of the writ and the actual surrender of the subject to the sheriff I will, upon a proper application, instantly allow another writ under which the reasonableness of the bail may be discussed. The doctrine of res adjudicata does not apply to habeas corpus. 29C.J. 179.
I am unable to avoid reference to an argument advanced by the assistant prosecutor of the pleas of Passaic county. The deduction was advanced by him that my allowance of this habeascorpus was a reflection upon the judge of the quarter sessions. In the earnestness of his opposition to the reduction of bail he became slightly incoherent and I am not entirely sure of his meaning. If he has drawn the conclusion that I intended any unfavorable criticism of, or reflection upon, Judge Harley, he has ascribed to me an action and motive that I have never entertained. I have no doubt that the county judge honestly exercised his discretion and felt that the amount was fully justified. In fact, my mind is still open to argument on the subject and it may be that I will be persuaded to adopt his views. I performed my duty as I was able to see it, and I am sure that neither the assistant prosecutor nor any other member of the bar would desire that I should fail to, in this or any other case, whether the performance would be pleasant or disagreeable to me or to anyone else.
The further point was made on behalf of the respondent or, more accurately, against Weinberger, that he had flamboyantly announced, upon his appearance before the quarter sessions, that he would give bail in the amount of a million dollars. This may not have been in the best of taste and certainly was not in keeping with the respect due the court; but surely I am not expected to attach any great weight to a theatrical statement made by a man who must have been *Page 133 
under a great strain, in considering a subject involving his constitutional right of reasonable bail.
The experienced counsel who appeared with the assistant prosecutor on behalf of the respondent has commented upon the enormity of presenting to this court a pleading or affidavit not literally true, or at least believed to be true by the solicitor who prepared and presented it. I agree with him that as an abstract principle it would amount to a crime and a very serious one. But, after all, laws are to be applied in the light of reason and, as in any other crime, it would be necessary to include a finding that there was a criminal intent. Now, how can I be expected to punish what I consider to be an honest mistake of practice when there was no intent to impose upon the court and where the thing was fully explained, especially in view of what I have said as to the stress under which not only the person was in whose behalf the application was made, but also his brother who made it?
In addition to the proceeding that has been discussed, there was another entirely separate one in behalf of one Frank C. Campbell who was jointly indicted with Weinberger. The cases are exactly parallel for the purposes of this discussion, he having been required to put in bail in the sum of $100,000. What has been said in the Weinberger case applies equally in Campbell's case.
Both writs should be discharged. In view of what has been said above about allowing an alias writ no orders discharging will be granted except upon notice or the presence of counsel on each side. *Page 134