## Respublica *against* Levi Arnold, Benjamin Arnold and James Arnold.

*Habeas corpus* under the act of 1785, does not lie to the bail of one charged with a criminal matter.

If persons indicted keep the state witnesses out of the way, they are not entitled to be discharged, tho' two sessions have intervened, under the act of 1785.

ON motion for a *habeas corpus*, the deposition of Levi Arnold was read, stating, that on the 3d February 1801, Benjamin Arnold and himself were committed to the gaol of Fayette county, on suspicion of burning the barn of Nathaniel Breading, esq., or being accessaries thereto, and that James Arnold was admitted to bail ; that at the March sessions following, an indictment was found by the grand jury against Joseph Cairns, as principal in the said arson, and against himself and the two defendants as accessaries before the fact, in the Court of General *264] *Quarter Sessions of the peace ; that a precept for holding a Court of Oyer and Terminer and General Jail Delivery, issued to the June sessions following, when the defendants were ready for their trial with their witnesses; but that Cairns, the principal, not being taken on the process, the indict

[Respublica *v.* Arnold.]

ment was continued and the defendants admitted to bail; that another Court of Oyer and Terminer was held in September sessions following, when the defendants were again ready for trial with their witnesses, but Cairns having fled, the trial was postponed, and the defendants again entered into recognizances for their appearance.

The court remarked, that application should be made to the justices of Oyer and Terminer for relief. If there was no prospect of apprehending the principal, and no special circumstances could be shewn against the defendants, such as concealing of the principal, or keeping him or the witnesses out of the way, they would certainly discharge the defendants from bail, as was done in the case of James Young *v.* Jack, in Franklin county; or if they deemed them to be dangerous characters, would bind them over to the peace.

The counsel on both sides answered, that this application had been made and refused, and that they had been expressly referred to this court, by the justices of Oyer and Terminer, at their last sessions.

Several depositions were then read, tending to shew on the part of the defendants, their innocence and the improbability of the charge made against them; and on the part of the commonwealth, that the defendants had threatened the state witnesses, and assisted in the escape of Cairns, the principal, from justice.

Mr. Ross for the defendants moved, that a *habeas corpus* might issue to the bail, that they might be discharged from their recognizances. The defendants were, in a legal sense, under actual confinement and restrained of their liberty; their bail might surrender them. The 3d section of the act of 18th February 1785, expressly directs, that if a person committed for treason or felony, shall not be tried the first sessions after his commitment, he shall on the last day of the sessions be admitted to bail, unless it shall appear, that the witnesses for the commonwealth could not then be produced; and if he shall not be tried at the second sessions, unless the delay happen on his application, or with his consent, he shall be discharged from imprisonment. 2 Dall. St. Laws 243. This law is obligatory on the court and takes away all discretion. It is couched in strong *terms, "it shall and may be lawful for the justices, and [*265 "they are hereby required," &c. Should a defendant be guilty of improper practices, by tampering with witnesses, or preventing their appearance to give evidence, he is obnoxious on that score to a prosecution for the misdemeanor, but is legally entitled to a discharge from the crime laid against him. Here the indictment originated in the Quarter Sessions, and two sessions of Oyer and Terminer have passed over without bringing the defendants to trial.

Mr. Campbell for the commonwealth opposed the motion,
3 Yeates—16

[Respublica *v.* Arnold.]

Here has been no oppression, or unreasonable delay on the part of the state. It is a well known principle of law, that accessaries cannot without their consent, be tried before the principal. They have refused that consent, and therefore have no grounds to complain of the delay.

The 3d section of the act extends only to principals, not to accessaries ; the words are "if any person shall be committed for treason or felony," &c. Nor does this part of the act, (which is borrowed from the British statute of 31 Car. 2, c. 2, called the *habeas corpus* act, 3 Ruff. stat. 397) refer to any other cases, than where the party applying is in gaol, in actual custody. The first section runs, "if any person shall be or stand "committed or detained for any criminal or supposed criminal "matter," &c. The *habeas corpus* is to be directed to the person in whose custody the prisoner is detained ; there is to be a payment or tender of the charges of bringing the said prisoner, &c. the word prisoner being used throughout this section, and also in the 2d and 3d sections.

Besides, it has been proved by the depositions, that highly improper threats have been thrown out by the defendants against the witnesses on the part of the prosecution, and there are strong colourable grounds to believe, that they have aided in the escape of the principal offender. Under such special circumstances the Court of Oyer and Terminer clearly possessed the power of continuing the parties under recognizance.

By THE COURT. There can be no difficulty in saying that if principals, the superior offenders, are entitled to the benefits of the law of 1785, the accessaries, who are in inferior grades of criminality, must have the same pretensions.

YEATES, J. was of opinion, that the second objection on the part of the commonwealth was well founded. The provisions in the first twelve sections of the law of 1785, all go to the cases of *persons committed or detained for any criminal or supposed criminal matter, to prisoners in actual custody of some officer of justice.* The 13th and 14th sections are not to be found in the British statute of 31 Car. 2, c. 2,† and are valuable improvements of the rights and liberties of citizens ; but they do not respect commitments for criminal matter. The 3d section of the act directs that the justices of Oyer and Terminer shall on the last day of the term, next after the commitment of the party, who shall not be indicted and tried, set at liberty the said prisoner, upon bail, &c. This clearly shews, that the legislature did not contemplate a party admitted to bail, as a prisoner under commitment, besides confining the authority and requisition so to act, solely to the court, before whom the prisoner is to receive his trial. Would not a *habeas corpus,* directed to the bail of a supposed offender, be perfectly novel ? Could

[*266]

* A constable is within the *habeas corpus* act. 1 Stra. 167
† *Vide* new ed. of Bac. Abr. Vol. 3, p. 18.

[Robinson, Assignee, *v.* Beall et al.]

we or either of us do an act, which would amount to a legal discharge of the recognizances in the court of Oyer and Terminer?

SMITH, J. said, that the inclination of his mind was, that the *habeas corpus* would not lie to the bail; but declined giving any decided opinion on the point.

BY THE COURT. We have no doubt of the powers of the court of Oyer and Terminer of retaining the defendants under bail, to answer the indictment, if their minds were satisfied, either that the witnesses were kept out of the way by the procurement or threats of the defendants, or that they had prevented the arrest of the principal. It would be monstrous to suppose, that the parties by their own improper conduct, should elude the punishment for a superior offence, by subjecting themselves to a prosecution for misdemeanor. We must refer the defendants to the Court of Oyer and Terminer, who are best acquainted with the circumstances of the case. There they will not be treated with oppression; but if the public interests and safety require it, they will administer that preventive justice, which the laws of the government empower them to exercise.

Motion denied.

Cited 16 S. & R. 306 in support of the decision that a prisoner, who stands indicted for aiding and abetting another to commit murder, and has not been tried at the second term, is not entitled to his discharge on *habeas corpus*, if the principal has absconded, and proceedings of outlawry against the principal were commenced without delay, but there had not been time to finish them.
Cited in 10 W. N. C. 54; 87 Pa. 215.

*William Robinson assignee of Alexander [*267 Armstrong *against* Benjamin Beall and Henry Russel.

Bond by A and B to C assigned to D. A joint bill by E and C assigned after the death of E to A, before assignment to D, is a good set off against the bond sued by D.

Case stated for the opinion of the court.

On the 20th July 1800 the present suit was commenced on a bond given by the defendants to Armstrong, dated the 6th May 1799, and duly assigned to the plaintiff on the 30th June 1800.

The defendants plead payment with notice of a set off. They claim a defalcation of a joint bill by William Cameron (since deceased) and Alexander Armstrong aforesaid, to Andrew Baine, for the payment of 36l. 5s. 6d. on the 9th October 1799, and duly assigned to the said Benjamin Beall on the 28th February 1800. Cameron the co-obligor died before the times of either of the assignments.

The question submitted to the court was, whether the bill in the hands of Beall the defendant, ought not to be allowed as a set off against the bond in the hands of Robinson the plaintiff?