406 A.2d 503

COMMONWEALTH of Pennsylvania

v.

Bobby BRIGHTWELL, Appellant.

COMMONWEALTH of Pennsylvania

v.

Jesse FAUST, Appellant.

Supreme Court of Pennsylvania.

May 8, 1979.

Reargument Denied Oct. 1, 1979.

402

Levis, Connors & Swanick, Robert J. Levis, Media, for Bobby Brightwell.

David W. McNulty, Springfield, for Jesse Faust.

D. Michael Emuryan, Asst. Dist. Atty., for the Com.

## ORDER

PER CURIAM.

Mr. Justice NIX filed an Opinion in Support of Affirmance which was joined by Mr. Justice LARSEN.

Mr. Justices ROBERTS and MANDERINO filed separate opinions in Support of Reversal.

Chief Justice EAGEN and Mr. Justice O'BRIEN did not participate in the consideration or decision of this case.

The Court being equally divided, the orders entered by the Court of Common Pleas of Delaware County, Criminal Division, are affirmed.

## OPINION IN SUPPORT OF AFFIRMANCE

NIX, Justice.

This is an interlocutory appeal from orders of the trial court denying appellants' motions to dismiss the pending charges under Pa.R.Crim.P. 1100. Appellants Faust and Brightwell were charged with various offenses including the crimes of murder, voluntary and involuntary manslaughter, and robbery arising out of a robbery of a gas station in the City of Chester in July of 1975. As a result of gunshot wounds sustained during the incident, Stephen Snyder, an attendant at the gas station, died. The preliminary hearing was held on February 14, 1975, and Brightwell was scheduled for trial to commence on June 16, 1975, and Faust's trial date was set for June 30, 1975. In June of 1974, a petition, filed by the Commonwealth for an extension under Rule 1100(c), was granted and a 90 day extension was given. The trial for both appellants was set for September 22, 1975. The 90 day extension period would have expired October 21, 1975.

The Commonwealth filed a second petition for extension in September of 1975, which was also granted and an additional 180 day extension was given. This second period of extension would have expired on March 21, 1976. A new trial date was set for January 26, 1976. On January 26, 1976, the Commonwealth advised the court [1] that it would be unable to proceed with the prosecution in these cases be-

1. The case of Brightwell has been assigned to Judge Toal and the case of Faust was assigned to Judge McGovern.

cause of the refusal of the Commonwealth's principal witness to cooperate, and requested and was granted, over appellants' objections, a *nolle prosequi.* On April 26, 1976, the Commonwealth made application for the removal of the *nolle prosequi.* After a hearing and argument, the application was granted on May 20, 1976 and the charges were reinstituted. On June 7, 1976, appellants petitioned for the dismissal of the charges asserting that Rule 1100 had not been complied with. Judges McGovern and Toal, sitting *en banc,* heard argument and entered separate orders denying the petitions in their respectively assigned cases. Both judges certified pursuant to Section 501(b) of the Appellate Court Jurisdiction, Act of 1970,[2] that the orders involved a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal would materially advance the ultimate termination of the matter. *See* 42 Pa.C.S. § 702(b). The Court allowed these appeals, and we would now affirm the orders entered below.

The prosecution's cases against Brightwell and Faust depended upon the testimony of an alleged accomplice in the crime, Donald Hunt. Hunt was convicted of murder of the second degree, robbery and other lesser charges for his participation and had agreed to testify as to the involvement of Brightwell and Faust. He did in fact testify against appellants at the preliminary hearing in these matters. At the hearing on the request to remove the *nolle prosequi,* the Commonwealth produced testimony to establish that Brightwell and Faust had intimidated and threatened Hunt, promising harm to him and his family if he continued to cooperate with the prosecution in the case against appellants.[3] The testimony also indicated that appellants had not only the ability, but also the disposition to accomplish these threats and that the witness's withdrawal of his cooperation

2. July 31, 1970, P.L. 673, No. 233, art. V, § 501; 17 17 P.S. § 211.501 (Supp. 1978–79).

3. This consolidated hearing was presided over by Judge Kelly.

was as a direct result of the fear engendered by these threats.[4]

■ Appellants first argue that the ruling of Judge Kelly removing the *nolle prosequi* cannot be construed as a finding that they intimidated Hunt because Judge Kelly did not state the basis for his decision to grant the Commonwealth's motion.[5] Since the only reason assigned for the request to remove the *nolle prosequi* was appellants alleged intimidation of Hunt, Judges McGovern and Toal properly concluded that Judge Kelly's grant of the motion reflected his acceptance of the Commonwealth's evidence establishing the intimidation.

We are thus faced with the question as to whether a delay resulting from the defense's intimidation of a principal Commonwealth witness is excludable from the computation of the 180 day period in which trial was to commence. The court had granted two extensions under Rule 1100 whereby the period was finally determined to expire on March 21, 1976. Since the propriety of these extensions are not before us, we must accept that date as the time within which trial was required to be commenced. The testimony also established that the effects of the intimidation first became manifest during a suppression hearing held in August, 1975. *See* n. 4, *supra.* The effect of the intimidation caused by appellants continued until March of 1976, n. 4, *supra.* Thus, the period of delay chargeable to appellants' acts of intimidation extended from August, 1975 through March, 1976. If this period is deemed not to be chargeable to the Commonwealth, the court's decision denying the motions to dismiss was clearly correct.

4. The Commonwealth first became aware of Hunt's change of position at a suppression hearing held in August of 1975, where the witness recanted his earlier statements regarding the occurrence. The reason for Hunt's actions did not come to light until March of 1976, when he first disclosed to his counsel that these threats had been made.

5. We note that these appeals are from the orders of Judges McGovern and Toal and the validity of the order of Judge Kelly is not presently before us.

The appellants' argument is implicitly structured upon the premise that the instant period delay can only be excluded from the computation of Rule 1100 if it falls within the expressed terms of Section (d) of the Rule. It is asserted that since (d) is silent as to circumstances such as those presented in this case, there is no basis for excluding the challenged period from the time in which trial should have been commenced. An acceptance of such a construction of the Rule would permit a result completely at odds with the purposes sought to be achieved by the promulgation of that Rule.

One of the purposes of Rule 1100 is to protect the right of an accused to a speedy trial.[6] "[T]he ultimate goal is to require all cases to be tried within 180 days from the filing of a complaint . . . ." Comment to Rule 1100. Rule 1100 was drafted in accordance with the rationale of *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972), wherein we concluded that the only effective means of insuring the right of an accused to a speedy trial was to set forth a "stated time period within which accused persons must be either brought to trial or released from any threat of prosecution." *Id.*, 449 Pa. at 308, 297 A.2d at 132.

**6.** Other goals achieved by Rule 1100 have been set out in cases decided by this Court. *See, e. g. Commonwealth v. Smith*, 477 Pa. 424, 383 A.2d 1280 (1978) (Rule 1100 encourages due diligence on the part of the prosecution); *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976) (Rule 1100 works to reduce the backlog of cases).

[T]here is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes. . . . Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation.

Nevertheless, we know of no case wherein the right to a speedy trial has been violated when the cause for the delay has been properly attributable to the defendant. To the contrary, where the defendant has deliberately caused the delay, he has been prevented from taking advantage of his own wrong. *See, e. g., Commonwealth v. Nickol,* 476 Pa. 75, 381 A.2d 873 (1977); *Clark v. Commonwealth,* 29 Pa. 129 (1858); *Respublica v. Arnold,* 3 Yeates 263 (1801); *Commonwealth ex rel Haggerty v. Supt. of Phila. Co.,* 4 Brewst. 320 (1969). *See,,* generally, Annotation 57 A.L.R.2d 302; 129 A.L.R. 572 and cases cited therein.

In *Commonwealth v. Nickol, supra,* we held that there had been no violation of an appellant's right to a speedy trial where he fled the jurisdiction and where his whereabouts were unknown. *See also Commonwealth v. Vorhauer,* 232 Pa.Super. 84, 88, 331 A.2d 815, 817 (1974); *Commonwealth v. Taylor,* 193 Pa.Super. 386, 394, 165 A.2d 134, 139 (1960); *Commonwealth ex rel Sell v. Burke,* 174 Pa.Super. 344, 101 A.2d 174 (1953).

In *Respublica v. Arnold,* 3 Yeates 263, 266 (1801), it was held that, where the two defendants, who had been indicted and jailed awaiting trial as accessories, threatened and intimidated Commonwealth witnesses and assisted in the escape of the principal from justice, they were not entitled to be discharged although two sessions of court had intervened.[7] This Court held:

> If an accused cannot make bail, he is generally confined . . . in a local jail. This contributes to the overcrowding and generally deplorable state of those institutions. . . . At times the result may even be violent rioting. Finally, lengthy pretrial detention is costly. . . .
> *Barker v. Wingo,* 407 U.S. 514, 519–20, 92 S.Ct. 2182, 2186–2187, 33 L.Ed.2d 101 (1972) (footnotes omitted). *See generally, Commonwealth v. Hamilton, infra,* for a similar discussion of the goals to be achieved by a speedy trial Rule.

7. Act of February 18, 1785, 2 Sm. 275 § 3. The modern version of the two term rule is found at 19 P.S. § 781 (1978). The two term rule was a legislatively created device used in this jurisdiction to protect the right of the defendant to a speedy trial. *Commonwealth v. Hamilton,* 449 Pa. 297, 303, 297 A.2d 127, 130 (1972).

It would be monstrous to suppose, that the parties by their own improper conduct, shall elude . . . punishment . . .. *Id.*[8]

In *Commonwealth ex rel Haggerty v. Supt. of Phila. Co.,* *supra,* the Court made the following concise findings in rejecting the defendant's assertion of a speedy trial violation:

1st. That the Commonwealth was not able to proceed to trial by reason of the absence of important and material witnesses.

2nd. That the absence of said witnesses had been effected by and through the procurement of the defendant.

3rd. That he was the party chargeable with the delay. *Id.* at 323.

While Rule 1100 is a shield to protect defendants from undue procrastination in the commencement of proceedings against them, we refuse to over-extend the protections afforded by that Rule in a manner that would enable it to be used as a sword to allow the accused to benefit from his own misconduct. We hold that Rule 1100 does not act to bar proceedings against a defendant because of delay, where that defendant has been instrumental in causing the delay through threats and intimidations directed against witnesses for the Commonwealth.

Appellants argue that *Commonwealth v. Whitaker,* 467 Pa. 436, 359 A.2d 174 (1976) applies to the facts of the case at hand in a fashion requiring a dismissal under Rule 1100(f). We find that our holding in *Whitaker* is not con-

8. *Respublica v. Arnold,* 3 Yeates 263, 266 (1801) was cited with approval in *Commonwealth v. Moncak,* 375 Pa. 559, 562–63, n. 1, 101 A.2d 728, 730, n. 1 (1954) (the two-term rule does not apply when the delay is occasioned by the wrongful act of the defendant); and *Commonwealth v. Supt. of County Prison,* 97 Pa. 211, 215 (1881) wherein it was stated:

Hence, if one under indictment induces the witnesses on the part of the Commonwealth to keep out of the way so that their attendance cannot be procured, he is not entitled to be discharged under the act, although two terms have intervened after his commitment. *Arnold* was also cited with approval in *Clark v. Commonwealth,* 29 Pa. 129 (1858).

trolling under the instant facts. In *Whitaker*, "two hundred sixty-eight days after appellee's arrest, the prosecution moved, pursuant to Rule 314, Pa.R.Crim.P., for leave to enter a *nolle prosequi* in the case against appellee on the grounds that it had no admissible evidence with which to prosecute the case." *Id.*, 467 Pa. at 438, 359 A.2d at 175. The nolle prosequi was granted and approximately two months later, the prosecution filed a motion to vacate the nolle prosequi. (At the time of *Whitaker*, Rule 1100(a)(1) provided that trial should commence no later than two hundred seventy (270) days from the date on which the complaint was filed). The appellee filed a motion to dismiss all charges alleging that Rule 1100 had been violated. The trial court granted the motion to dismiss with prejudice because the prosecution had failed to bring the accused to trial within the two hundred seventy days. 467 Pa. at 439, 359 A.2d at 175. After a review of our decision in *Commonwealth v. Hamilton*, supra, we stated the following:

A *nolle prosequi* is the voluntary withdrawal by the prosecuting attorney of present proceedings on a particular bill of indictment. *See Commonwealth v. McLaughlin*, 293 Pa. 218, 142 A. 213 (1928). Rule 314 requires that a *nolle prosequi* issue only with the approval of the court. Rule 1100(c) provides a mechanism whereby the prosecution may secure an extension of the time within which it must bring an accused to trial. Paragraph (c) provides for a hearing at which the defendant, as well as the prosecution, can be heard. It also provides that if a continuance is granted, a specific date is to be set before which date trial must commence. In this way, Rule 1100(c) seeks to prevent indefinite postponements. Through these two rules, the district attorney's power to decide whether and when to prosecute, and whether and when to continue or discontinue a case is subjected to the power of the court to supervise all court proceedings and to protect the accused's right to a fair trial. *Commonwealth v. DiPasquale*, 431 Pa. 536, 246 A.2d 430 (1968).

Stripped of its Latin label, *the prosecution's motion for a nolle prosequi pursuant to Rule 314 was simply an effort to gain an extension of the time period during which it was required to bring appellee to trial. This they attempted to do without complying with Rule 1100(c).* In *Commonwealth v. Woods,* 461 Pa. 255, 336 A.2d 273, 274 (1975), we discussed paragraph (e) of Rule 1100, which requires that a new trial commence within ninety days after the entry of the appellate court order granting it, stating: "[t]he time limits set forth in the rule are definite." The consequence of violation of Rule 1100 is discharge. Only in this way can the accused's right to a speedy trial be effectively protected.

*Commonwealth v. Whitaker,* 467 Pa. 436, 442–43, 359 A.2d 174, 177 (1976). (emphasis added).

In *Whitaker,* we expressed our disfavor with any attempt by the Commonwealth to use the *nolle prosequi* procedure as a technique to extend the time in which to commence trial without providing an adequate reason for such an extension and establishing that the prosecutor had exercised due diligence as required by section (c). From this record, it is clear that the Commonwealth requested the entry of the *nolle prosequi* because it had concluded that a successful prosecution was impossible without the testimony of the prosecution's main witness. Thus, there was no attempt to gain time but rather the election to apply for the *nolle prosequi* reflected a determination that further prosecution would be fruitless. The evil addressed in *Whitaker,* a prosecutor's attempt to unjustifiably delay trial to enhance its position, is not present where the Commonwealth had no expectation of ever being able to successfully try the appellant at the time that the order of *nolle prosequi* was entered. In this case, there is no question as to the bona fide use of the *nolle prosequi* procedure by the Commonwealth as there was in *Whitaker.*

Since the Court has granted the Commonwealth's request to remove the *nolle prosequi* and the propriety of that order has not been challenged, nor is it being challenged in this

appeal, the fact that a *nolle prosequi* was entered is of no significance for a Rule 1100 violation consideration, absent some showing of an improper use of the *nolle prosequi* procedure by the Commonwealth. The sole determination to be made is whether the cause has been tried within the time required under Rule 1100. Having previously determined that the period of delay caused by the threats and intimidations of the appellants were properly excluded from a Rule 1100 computation, the trial court's determination that the period in which trial was to be commenced had yet to expire must also be accepted. In reaching this conclusion, the fact that during some portion of that period a *nolle prosequi* had been entered is a neutral one and has no bearing upon the result. What is of significance is that the time properly computed under Rule 1100, had not expired at the time the appellants' motion to dismiss was ruled upon.

For the foregoing reasons, the appeal from the order of the Court of Common Pleas of Delaware County denying appellants' petition to dismiss charges should be affirmed.

LARSEN, J., joins in this opinion.

## OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

As of June 1976, 502 days after appellants' arrest, 322 days after expiration of the 180 day period in which trial is required to begin under Pa.R.Crim.P. 1100(a)(2), and seventy-eight days after expiration of the second of two extensions granted the Commonwealth pursuant to Rule 1100(c), the Commonwealth still had not brought appellants to trial. Nonetheless, Mr. Justice Nix concludes that the Court of Common Pleas of Delaware County properly denied appellants' motions to dismiss the charges with prejudice. I must disagree.

Appellants were arrested on January 22, 1975. Under Rule 1100(a)(2), trial should have commenced no later than July 21, 1975. In June, and again in September 1975, the court of common pleas granted the Commonwealth exten-

sions pursuant to Rule 1100(c). According to the Opinion in Support of Affirmance, the second extension expired on Sunday, March 21, 1976, 395 days after appellants' arrest. The Commonwealth has failed to seek any further extensions.

In January, 1976, two months before the stated expiration date of the second extension, the court of common pleas granted the Commonwealth a nolle prosequi based upon the Commonwealth's claim that it lacked sufficient evidence to convict appellants. On April 26, 1976, one month after the second extension had expired, the Commonwealth petitioned the court of common pleas to remove the order granting the nolle prosequi. After another month of delay, on May 20, 1976, the court granted the Commonwealth's request. Eighteen days later, on June 7, 1976, appellants who had still not yet been brought to trial moved for dismissal of the charges.

Failure to grant relief on this record of delay is contrary to the fundamental principles of Rule 1100. As of the date of appellants' motions to dismiss, trial had been delayed 322 days beyond the 180 days period in which trial must begin under Rule 1100(a)(2). The Commonwealth makes no claim that any period of delay was chargeable to appellants and should be excluded under Pa.R.Crim.P. 1100(d). Thus, the specific language of Rule 1100 requires that the 322 days of delay must "be justified by an order granting an application by the Commonwealth for an extension of time pursuant to section (c)." *Commonwealth v. Lamonna*, 473 Pa. 248, 253, 373 A.2d 1355, 1357 (1977). Extensions accorded the Commonwealth here fall well short of justifying the 322 days of delay, and leave unaccountable the seventy-eight day delay between expiration of the second extension and appellants' motion to dismiss.

That the Commonwealth obtained a nolle prosequi of charges during the second extension does not in any respect excuse its failure to continue to abide by the mandate of Rule 1100. In *Commonwealth v. Whitaker*, 467 Pa. 436, 359 A.2d 174 (1976), this Court rejected the Commonwealth's contention that entry of nolle prosequi tolls the required

period for commencement of trial under Rule 1100(a)(1). This Court stated:

> "Through the simple expedient of a *nolle prosequi*, the prosecution could indefinitely delay an accused's trial, thereby frustrating the stated objective of Rule 1100, while at the same time, escaping the consequences of its violation. Such a result is also recognized by the ABA Standards for Criminal Justice—Relating to Speedy Trial, Approved Draft, 1968, at 40–41, where it is stated that '[i]f following undue delay in going to trial, the prosecution is free to commence prosecution for the same offense, subject only to the statute of limitations, the right to speedy trial is largely meaningless.'"

*Whitaker*, 467 Pa. at 442, 359 A.2d at 76–77. Here, as in *Whitaker*, the Commonwealth's failure even to seek, let alone obtain, a proper extension under Rule 1100(c), requires the conclusion that the Commonwealth has frustrated the objective of Rule 1100 and rendered appellants' right to a speedy trial "largely meaningless."

According to the Opinion in Support of Affirmance, appellants "intimidated" a convicted accomplice after the witness testified on the Commonwealth's behalf at appellants' preliminary hearing. As a result, the witness refused to testify on behalf of the Commonwealth at a suppression hearing which followed, although the witness later chose again to testify against appellants. The Opinion concludes that the "intimidation" caused delay attributable to appellants not at any time after expiration of the extensions, but rather within the extension periods granted the Commonwealth. Mr. Justice Nix then creates a new judicial exception to Rule 1100 that excuses the Commonwealth's failure to bring appellants to a prompt trial for seventy-eight days after expiration of the second extension, based upon events which allegedly occurred completely within the period of delay already attributable to the Commonwealth's extensions.

The reliance of the Opinion in Support of Affirmance on the claimed "intimidation" is entirely improper. The Commonwealth raised the possibility of intimidation only after expiration of the second extension in March, 1976, at the

hearing on the Commonwealth's motion to remove the nolle prosequi. No express finding of "intimidation" was made at that hearing. Instead, the court merely granted the Commonwealth's motion to remove the nolle prosequi. And no finder of fact has reached the conclusion relied upon by Mr. Justice Nix that the alleged "intimidation" should be charged to appellants beginning August 1975 (when the accomplice did not testify against appellants at the suppression hearing). Finally, discovery of the alleged "intimidation" in no way justifies the Commonwealth's failure to seek an additional extension. In *Commonwealth v. Shelton*, 469 Pa. 8, 15, 364 A.2d 694, 697 (1976), this Court made clear that:

> "[t]he Commonwealth may not seek an extension pursuant to section (c) of the Rule nunc pro tunc, that is, the application for an extension *must be filed* prior to the expiration of the mandatory period set forth in the Rule or set forth in a previous order granting an extension."

Accord, *Commonwealth v. Morgan*, 484 Pa. 117, 398 A.2d 972 (1979) ("even if this record might have met the requirements for the grant of . . . an extension, that avenue is not here available to the Commonwealth since it failed to pursue this course"). Here, as in both *Shelton* and *Morgan*, this Court should continue not to excuse the Commonwealth's failure to obtain timely extensions rather than create a new judicial exclusion of delay.

Because the Commonwealth has failed both to bring appellants to trial 322 days after expiration of the date trial was to begin, and to account for its failure to initiate trial seventy-eight days after expiration of the second of two extensions, I would reverse the orders of the court of common pleas denying appellants' motions to dismiss and order appellants discharged.

## OPINION IN SUPPORT OF REVERSAL

MANDERINO, Justice.

I disagree with the opinion in support of affirmance which concludes the delay was caused by appellants' intimidation

of the witness, even though no findings of fact were made by the trial judge to that effect. The opinion in support of affirmance assumes that such findings necessarily provided the basis for the motion to remove the nolle prosequi. The motion, however, may have just as well been granted perfunctorily. This matter should be remanded for an evidentiary hearing followed by findings of fact and conclusion of law concerning the cause of the delay.