419 A.2d 141

**COMMONWEALTH of Pennsylvania**

v.

**Linda NAVARRO, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 1979.

Filed March 21, 1980.

Reargument Denied June 23, 1980.

Leonard Sosnov, Assistant Public Defender, John W. Packel, Assistant Public Defender, Chief, Appeals Division, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before PRICE, WIEAND * and VAN der VOORT, JJ.

PRICE, Judge:

Following a non–jury trial on August 9, 1978, appellant was convicted of simple assault[1] and aggravated assault.[2] Post–trial motions for a new trial and in arrest of judgment were denied, and she was sentenced to a three year term of probation. On appeal, appellant contends that her right to a speedy trial under Pa.R.Crim.P. 1100 was violated and that the trial court committed reversible error in admitting into evidence hearsay testimony. Finding merit to neither of these contentions, we affirm the judgment of sentence.

The pertinent facts are as follows. On October, 18, 1977, Mr. William W. Savin heard scuffling noises and yelling emanating from the residence of his seventy–eight year–old neighbor, Mr. William Thomas, the victim herein. Upon investigating the commotion, Mr. Savin saw appellant emerge from the victim's dwelling. Appellant had blood on her hands, face and clothing. Mr. Thomas then came into view: his head was bleeding profusely, his face was covered with blood and he was moaning loudly. Appellant thereupon ran from the scene, and Mr. Savin gave pursuit, eventually apprehending her at gunpoint some distance from the victim's residence. Mr. Savin subsequently handed appellant over to the police at the scene of the crime and she was

* Judge DONALD E. WIEAND is sitting by special designation.

1. 18 Pa.C.S. § 2701.

2. 18 Pa.C.S. § 2702.

there arrested. During trial, Mr. Savin testified that he and his mother visited the victim in the hospital some thirty minutes after the attack. At that time, Mr. Thomas told Mr. Savin that he was preparing breakfast for appellant when she approached him from behind, put a knife to his neck and demanded money. Mr. Thomas refused appellant's demand, and a struggle ensued in which he was stabbed numerous times in the neck and head. The Commonwealth also presented the testimony of police officer Edward Allen who testified that while on patrol that day, he observed the bleeding Mr. Thomas standing in the doorway of his residence. When Officer Allen approached Mr. Thomas, the victim told him he had "been stabbed" and that "the girl . . . . next door" (appellant) had stabbed him.

A complaint was filed against appellant on October 18, 1977, but at the preliminary hearing on November 21, 1977, the Commonwealth withdrew the complaint because its only eyewitness to the stabbing, to wit, Mr. Thomas, had died in the interim from heart failure, and the Commonwealth did not believe that it would be able to establish a prima facie case against appellant. On March 27, 1978, the Commonwealth, now believing that it circumstantially could make out a case, filed a second complaint against appellant charging her with the same offenses. Pursuant to Pa.R.Crim.P. 1100, appellant filed a motion to dismiss the charges on May 1, 1978, the 195th day following the filing of the first complaint and the 35th day after filing of the second complaint. The petition was denied on August 7, 1978, and the case proceeded to trial on August 9, 1978, the 295th day following filing of the first complaint and the 135th day after filing of the second complaint.

Under the precept of Rule 1100, trial in a criminal case in which a written complaint is filed shall commence no later than 180 days from the date on which it is filed, excluding periods of extension obtained by the Commonwealth pursuant to section (c) [3] of the rule and periods of time automati-

3. Section (c) of Rule 1100 provides:

cally excluded under section (d).[4] Appellant contends that in the instant case, the run time for Rule 1100 purposes should be construed as beginning on October 18, 1977–the filing date of the first complaint against her. Under this analysis, the August 9 date of trial commencement occurred beyond the mandatory 180 day period. We hold that the run time in the instant case should be calculated from the date on which the second complaint was filed–March 27, 1978– thereby placing commencement of trial within the mandated time of Rule 1100.

The problem of calculating Rule 1100 run time in light of multiple complaints is one which we have addressed on numerous occasions. Generally, it can be stated that the analysis resolves into a two step approach: (1) whether the prior complaint was properly dismissed; and (2) whether the record indicates an attempt by the Commonwealth to circumvent Rule 1100. *Commonwealth v. Brocklehurst*, 266 Pa.Super. 335, 404 A.2d 1317 (1979); *Commonwealth v. Braithwaite*, 253 Pa.Super. 447, 385 A.2d 423 (1978); *Commonwealth v. Mumich*, 239 Pa.Super. 209, 361 A.2d 359 (1976).

Addressing the first prong of the test, we hold that the first complaint was properly withdrawn. When the

"At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. A copy of such application shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon. Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Any order granting such application shall specify the date or period within which trial shall be commenced."

4. Section (d) of the rule provides:
   "In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:
   (1) the unavailability of the defendant or his attorney;
   (2) any continuance in excess of thirty (30) days granted at the request of the defendant or his attorney, provided that only the period beyond the thirtieth (30th) day shall be so excluded."

witness or witnesses upon whom the Commonwealth intends to establish its prima facie case are unavailable due to such reasons as death or invocation of the fifth amendment, and a prima facie case therefore cannot be established, withdrawal or dismissal of the complaint is a proper procedure. Subsequent prosecution will not be barred by the speedy trial rule unless the record evidences a deliberate attempt by the Commonwealth to circumvent Rule 1100. *See Commonwealth v. Weitkamp,* 255 Pa.Super. 305, 386 A.2d 1014 (1978).

■ Addressing the second prong of the test, we find no indication in the record of any attempt by the Commonwealth to circumvent the mandate of the speedy trial rule by initiating a second complaint. We find persuasive the reasoning of Justice Nix who addressed a similar question in the case of *Commonwealth v. Brightwell,* 486 Pa. 401, 406 A.2d 503 (1979):

"In *[Commonwealth v.] Whitaker,* [467 Pa. 436, 359 A.2d 174 (1976)] we expressed our disfavor with any attempt by the Commonwealth to use the nolle prosequi procedure as a technique to extend the time in which to commence trial without providing an adequate reason for such an extension and establishing that the prosecutor had exercised due diligence as required in section (c). From this record, it is clear that the Commonwealth requested the entry of the nolle prosequi because it had concluded that a successful prosecution was impossible without the testimony of the prosecution's main witness. Thus, there was no attempt to gain time but rather the election to apply for the nolle prosequi reflected a determination that further prosecution would be fruitless. The evil addressed in *Whitaker,* a prosecutor's attempt to unjustifiably delay trial to enhance its position, is not present where the Commonwealth had no expectation of ever being able to successfully try the appellant at the time that the order of nolle prosequi was entered. In this case, there is no question as to the bona fide use of the nolle prosequi procedure by the Commonwealth as there was in *Whitaker.*" *Id.,* 486 Pa. at 410, 406 A.2d at 507 (Opinion in Support of Affirmance).

Additionally, we note that no objection was made to the withdrawal of the charges, and in the interim between the time the first complaint was withdrawn and the time the second complaint was filed, no charges were pending against appellant, nor was she incarcerated. Therefore, it could not be claimed that the first complaint resulted in disrupting her employment, draining her financial resources, curtailing her associations, subjecting her to public obloquy or creating anxiety in her family or her friends. *See United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). Any of those potential results of being subject to criminal charges dissipated with the dismissal of the original complaint. *See Commonwealth v. Johnson*, 487 Pa. 197, 409 A.2d 308 (1979) (two grand jury proceedings).

In light of the above, we conclude that the run time for Rule 1100 purposes commenced on March 27, 1978, the filing date of the second complaint. Under this analysis, appellant's speedy trial claim fails, for trial began on the 135th day following the filing of the second complaint—well within the mandate of the rule.

■ Appellant's final contention is that the trial court committed reversible error in admitting into evidence hearsay testimony. The particular evidence appellant contests is the testimony of William Savin concerning the conversation he had with the victim in the hospital one half–hour after the stabbing incident. The testimony reads as follows:

"Q. Did Mr. Thomas tell you what happened?

A. Yes, he did.

Q. What did he say to you?

A. He said he was fixing breakfast for the young lady and while he was standing at the stove she came up to him and told him something was at the back of his neck. He said, "Well, what's that?" She said, "The knife." She asked him where the money was because he had given her some money the week before, $50,00. He said he loaned it to her. She wanted to know where the rest of the money was upstairs, and he wouldn't tell her and she kept forcing and then she started stabbing him, asking him where the

money was and he tried to save hisself [sic] and he struggled with her, hooping and hollering and struggling because he had a bad heart. He was struggling to keep from getting stabbed as many times as he could." (N.T. 21–22).

Over appellant's objection, the trial court judge admitted the testimony as a res gestae declaration. On appeal, appellant claims that this exception to the hearsay rule does not apply because the half–hour delay between the victim's stabbing and his statement to Mr. Savin vitiates the spontaneity requirement of res gestae statements. We hold that the victim's statement does qualify under the res gestae or spontaneous utterance exception to the hearsay rule, and therefore, the trial court was correct in admitting Mr. Savin's testimony into evidence.

█ "Res gestae" is a generic term encompassing four discrete exceptions to the hearsay rule: (1) declarations as to present bodily conditions; (2) declarations of present mental state and emotions; (3) excited utterances; and (4) declarations of present sense impressions. *See Commonwealth v. Pronkoskie*, 477 Pa. 132, 383 A.2d 858 (1978); *Commonwealth v. Cooley*, 465 Pa. 35, 348 A.2d 103 (1975); C. McCormick, Evidence § 286 (2d ed. 1972). The res gestae exception for spontaneous or excited utterance has been defined as:

" 'a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.' [*Allen v. Mack*, 345 Pa. 407, 410, 28 A.2d 783, 784 (1942).]" *Commonwealth v. Cooley*, 465 Pa. at 40–41, 348 A.2d at 106 (1975) (footnote omitted).

The rationale for admitting such statements into evidence is based upon the belief that a spontaneous declaration of an

162

individual who has recently suffered an overpowering emotional and shocking experience is likely to be truthful. *See Commonwealth v. Banks*, 454 Pa. 401, 311 A.2d 576 (1973); *Commonwealth v. Cheeks*, 423 Pa. 67, 223 A.2d 291 (1966). Our supreme court has enunciated two basic requirements for admission of a declaration under the excited utterance exception: (1) there must be some occurrence or event sufficiently startling to render normal reflective processes of an observer inoperative; (2) the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. *See Commonwealth v. Cooley, supra* ; C. McCormick, Evidence, *supra.*

In the instant case, appellant concedes that the repeated stabbing of the declarant was an event sufficiently startling to satisfy the first element. The issue she raises is that the half–hour delay between the stabbing incident and Mr. Thomas' declarations constituted an interval so lengthy that the requisite spontaneity of the second element was not satisfied.

There is no clear–cut rule as to the time sequence; whether the actual delay between the event and the statement is sufficient to negate "spontaneity" must be resolved in light of the peculiar facts of each case. *Commonwealth v. Pronkoskie, supra; Commonwealth v. Banks, supra; Commonwealth v. Cheeks, supra; Commonwealth v. Stokes*, 409 Pa. 268, 186 A.2d 5 (1962). The fact that the statements were not made immediately after the assault is not, in itself, controlling. *See Commonwealth v. Cheeks, supra.* Declarations made after a time period longer than the one herein have been ruled admissible as excited or spontaneous utterances. *See, e. g., Commonwealth v. Cheeks, supra* (45 minutes); *Thompson v. Philadelphia*, 222 Pa.Super. 417, 294 A.2d 826 (1972) (one hour);[5] *Hansky v. Jones & Laughlin*

5. The fact situation present in *Thompson* is strikingly similar to that of the instant case. In *Thompson*, the declarant an eighty–two year–old man, made his statement one hour after the startling event and while in the hospital being X-rayed for a broken hip.

*Steel Corp.,* 149 Pa.Super. 605, 27 A.2d 789 (1942) (35 minutes). Nor does the fact that the statement was given in narrative form preempt res gestae treatment so long as the circumstances of the case preclude the possibility of a shrewd and self--calculating answer. *Thompson v. Philadelphia, supra.*

In the instant case, the statement was made within a half--hour of the startling event. At the time of the statement, the victim was in a hospital still waiting to be treated for his injuries, which consisted of multiple stab wounds to his neck and head; this was the victim's first opportunity to explain to his friend, Mr. Savin, the bloody scene that Mr. Savin had witnessed. Given the age of the victim (seventy--eight), the degree of trauma he endured, and the proximity of the statement to the attack upon him, we conclude that the statement was sufficiently spontaneous to qualify under the spontaneous utterance exception to the hearsay rule.

Accordingly, the judgment of sentence is affirmed.