527 A.2d 148

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Percy Russell RHOADES, Appellant.**

Superior Court of Pennsylvania.

Submitted April 2, 1987.

Filed June 12, 1987.

---

56

Joseph L. Amendola, State College, for appellant.

Ray F. Gricar, District Attorney, Bellefonte, for Com., appellee.

Before WIEAND, BECK and CERCONE, JJ.

WIEAND, Judge:

Percy R. Rhoades was tried by jury and was found guilty of indecent assault[1] and corruption of a minor[2] because of the sexual molestation of P.S.B., an eight year old female child. Post-trial motions were denied, and Rhoades was sentenced to concurrent terms of imprisonment of not less than one year nor more than two years for indecent assault

1. 18 Pa.C.S. § 3126.
2. Pa.C.S. § 6301.

and not less than two and one-half years nor more than five years for corrupting a child. On direct appeal, he argues (1) that inculpatory statements which he made to another prisoner should have been suppressed; (2) that the trial court erred when it held admissible as an excited utterance a hearsay statement by P.S.B. that her father would not have shot her mother if it had not been for what Rhoades had done to her; (3) that the trial court erred by disallowing testimony of prior conduct of the child victim; (4) that he should have been permitted to show the jury his pre-trial willingness to submit to a penile tumescence test intended to show that he was impotent; and (5) that the sentencing court imposed a sentence which exceeded that recommended by the sentencing guidelines. We find no merit in these contentions and, therefore, affirm the judgment of sentence.

The evidence showed that on April 28, 1984, P.S.B. was induced by Rhoades and P.S.B.'s mother to masturbate Rhoades in his trailer at Wingate, Centre County. P.S.B. and her mother were then taken to their home in Curtin Village by Rhoades. When P.S.B.'s father returned home and learned what had happened, he took a gun and shot his wife.

After Rhoades had been formally charged and arrested pursuant to warrant, he was placed in the Centre County Prison. Vincent Carracciolo was housed in an adjoining cell where he was being held for security reasons because of his cooperation with authorities in their investigation of organized crime. Observing that Rhoades was visibly upset, Carracciolo asked him what was wrong. Rhoades told him that he had been involved with P.S.B.'s mother for several years and had lived with her at one time. He told Carracciolo about the incident in which P.S.B. and her mother had masturbated him in his trailer. Rhoades also said that he had "paid" P.S.B.'s mother for the child with a case of beer and that he was trying to "keep her" until she was old enough to have intercourse with him. Rhoades argues that his statements should have been suppressed because his

admissions were obtained in violation of his Sixth Amendment right to have counsel present during interrogation.

In *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985), the Supreme Court said:

> The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a "medium" between him and the State.... [T]his guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right. The determination whether particular action by state agents violates the accused's right to the assistance of counsel must be made in light of this obligation. Thus, the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached.... However, knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity. Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent.

*Id.* at 176, 106 S.Ct. at 487, 88 L.Ed.2d at 496 (citation and footnote omitted). See: *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *United States v. Hicks,* 798 F.2d 446 (11th Cir.1986).

The incriminating statement made by appellant was elicited without any deliberate attempt by representatives of the Commonwealth to interrogate appellant about his molestation of P.S.B. Although Carracciolo had been isolated from the general prison population for his own safety, appellant's placement in the adjoining cell was the result of happen-

stance. It was not the result of design to obtain from him an incriminating statement. Carracciolo had not been requested by police to interrogate Rhoades and was not promised favorable treatment for his testimony against Rhoades. Carracciolo testified that he had engaged Rhoades in conversation because Rhoades appeared to be upset and not for the purpose of obtaining an incriminating statement. He subsequently told police of his conversation at his own instance and without any request therefor by police.

In *United States v. Hicks, supra,* the defendant had been arrested and advised of her rights to counsel and to remain silent. She elected to remain silent and also requested an attorney. After having been processed and placed in jail, she met Marilyn West Armstrong (West) who was being held on a charge of parole violation. During conversation between the women, defendant made a "jailhouse confession." Prior to trial, defendant moved to suppress the statement which she had made to West on the ground that it had been obtained in violation of her right to counsel. The motion was denied, and defendant was convicted of drug offenses. On appeal, the Court of Appeals for the 11th Circuit affirmed. The Court held that because West had not been deliberately planted in custody to obtain information and had not been instructed by law enforcement officials to gather information while in custody, no violation of defendant's Sixth Amendment rights had occurred. The fact that West had worked as a government informant on an unrelated matter, the Court concluded, did not render her an agent of the government for all purposes.

*Hicks* is on all fours with the instant case. Although Carracciolo had cooperated with the Commonwealth on unrelated matters, he was not acting on behalf of the Commonwealth when he engaged Rhoades in conversation. Rather, he was acting on his own initiative, without any promise of benefit from the Commonwealth. In this respect, he was no different than any other prisoner to whom appellant might have spoken. The admission of an incrimi-

60

natory statement made under these circumstances did not violate Rhoades' Sixth Amendment rights.

■ After the shooting of P.S.B.'s mother, the father summoned his nephew, Donald Shay, who rushed to the family's home. There, he removed P.S.B. from the residence and took her to his car. He also called his wife, Margie, and asked her to meet him. P.S.B., visibly upset, said to him that the shooting wouldn't have occurred if it hadn't been for Rhoades. She then told her cousin about her participation in the masturbation of Rhoades. Later, while still crying, she told Margie Shay, who was trying to calm her, "Daddy would never have done it if mommy and [Rhoades] wouldn't have done what they did." She again repeated what had happened at the Rhoades trailer. The trial court, over objection, allowed the Shays to testify to the hearsay statements which had been made by P.S.B. The court held they were admissible under the excited utterance exception to the hearsay exclusion.

An excited utterance is the event speaking and not the speaker. It is an exception to the hearsay rule, carved from human experience, which teaches that an unreflected, spontaneous utterance made under the impact of a shocking, unexpected emotion, precipitated by a traumatic event, renders the speaker the medium and not the message. Such an utterance is allowed in evidence because it is spontaneous and unreflected, without influence from thought, design and reason. It is not accepted because the statement is or must be true, but because it could be at least as true as any other evidence. Before such evidence is received, it must be carefully weighed. As this Court stated in *Commonwealth v. Pronkoskie,* 477 Pa. 132, 383 A.2d 858 (1978):

"To come within the excited utterance exception to the hearsay rule, a statement must be:

... 'a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in

or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.' " (citation omitted)

*Id.*, 477 Pa. at 137–138, 383 A.2d at 860.

*Commonwealth v. Zukauskas,* 501 Pa. 500, 503–504, 462 A.2d 236, 237–238 (1983). See: *Commonwealth v. Cheeks,* 423 Pa. 67, 223 A.2d 291 (1966); *Commonwealth v. Stohr,* 361 Pa.Super. 293, 522 A.2d 589 (1987); 29 Am.Jur.2d *Evidence* § 708 (2d ed. 1967); *McCormick on Evidence* § 297 (3d ed. 1984); D. Binder, *The Hearsay Handbook* 41–48 (1975).

The relevant authorities teach that there are three requirements which must be met for an extra-judicial statement to be rendered admissible as an excited utterance. First, it must be shown that the declarant "witnessed an event sufficiently startling and so close in point of time as to render his reflective thought processes inoperable." *Commonwealth v. Pronkoskie, supra* 477 Pa. at 138, 383 A.2d at 860, citing *Commonwealth v. Little,* 469 Pa. 83, 364 A.2d 915 (1976) and *Commonwealth v. Cooley,* 465 Pa. 35, 348 A.2d 103 (1975). See: *Commonwealth v. Galloway,* 336 Pa.Super. 225, 485 A.2d 776 (1984). Second, "the declaration [must] be a spontaneous reaction to the startling event.... [However], there is no clear-cut rule as to the time sequence; whether the actual delay between the event and the statement is sufficient to negate 'spontaneity' must be resolved in light of the particular facts of each case." *Commonwealth v. Pronkoskie, supra* 477 Pa. at 141–142, 383 A.2d at 862–863, citing *Commonwealth v. Banks,* 454 Pa. 401, 311 A.2d 576 (1974); *Commonwealth v. Cheeks, supra; Commonwealth v. Stokes,* 409 Pa. 268, 186 A.2d 5 (1962). See: *Commonwealth v. Zukauskas, supra; Commonwealth v. Cooley, supra; Commonwealth v. Stohr, supra.* Finally, the declaration "must be 'made in reference to some phase of [the] occurrence which [the declar-

ant] perceived.' " *Commonwealth v. Edwards*, 431 Pa. 44, 49, 244 A.2d 683, 685 (1968), quoting *Carney v. Pennsylvania Railroad Co.*, 428 Pa. 489, 493, 240 A.2d 71, 73 (1968). It must "in some way elucidate, qualify, or characterize the act in question." 29 Am.Jur.2d, *supra* § 708, at 769.

In the instant case, the evidence showed that the eight year old declarant had just witnessed her father fatally shoot her mother following his learning of the sexual act in which the child and her mother had participated earlier on the same evening. It is difficult to perceive of a more startling and devastating event than to witness the shooting of one's mother by his or her father. Such an event was of the type which rendered the child's thought processes inoperable.

P.S.B.'s statements to Donald and Margie Shay occurred approximately 30–45 minutes after the shooting. Our courts have held that time lapses equal to and greater than this do not bar the admission of a statement "where the spontaneity born of excitement is otherwise satisfactorily shown to exist." *Commonwealth v. Cooley, supra* 465 Pa. at 41, 348 A.2d at 107. See: *Commonwealth v. Cheeks, supra* (45 minutes); *Commonwealth v. Blackwell*, 343 Pa. Super. 201, 494 A.2d 426 (1985) (30–45 minutes); *Commonwealth v. Von Smith*, 303 Pa.Super. 534, 450 A.2d 55 (1982) (55 minutes); *Commonwealth v. Galloway*, 302 Pa.Super. 145, 448 A.2d 568 (1982) (30 minutes); *Commonwealth v. Navarro*, 276 Pa.Super. 153, 419 A.2d 141 (1980) (30 minutes), *aff'd*, 499 Pa. 279, 453 A.2d 308 (1982); *Commonwealth v. Hess*, 270 Pa.Super. 501, 411 A.2d 830 (1979) (30 minutes); *Commonwealth v. Dugan*, 252 Pa.Super. 377, 381 A.2d 967 (1977) (within two and one-half to three hours); *Commonwealth v. Dessus*, 214 Pa.Super. 347, 257 A.2d 867 (1969) (within one hour); *Commonwealth v. Nowalk*, 160 Pa.Super. 88, 50 A.2d 115 (1947) (several hours). Both witnesses in the instant case testified that P.S.B. was very upset and crying when she made the statements challenged as hearsay. Given this testimony and the devastating nature of the event that P.S.B. had observed, it seems emi-

nently clear that she was laboring under the overpowering emotional reaction caused by the shooting of her mother.

That P.S.B. had been alone with her father during the first 20–25 minutes following the shooting did not, contrary to Rhoades' argument, render her extra-judicial statements inadmissible. Donald Shay testified that he had spoken to P.S.B. on the telephone immediately after the shooting and that she was very upset at this time. When he arrived at the Bryan home 20–25 minutes later, he said, P.S.B. was still very upset and remained so during the entire time before he delivered her to his wife. Both Shays tried unsuccessfully to calm the child. It is difficult to believe, under these circumstances, that P.S.B. had been induced by her father to make false statements against Rhoades. We conclude, therefore, that the second requirement of spontaneity was met.

The final requirement is that the excited utterance must be related to some phase of the startling occurrence. In the instant case, P.S.B.'s statements referred both to the shooting and the sexual assault, which had occurred several hours earlier. The evidence shows that these events were inextricably interrelated; it was only upon learning of the sexual assault that P.S.B.'s father retrieved a gun and shot her mother. We conclude, therefore, that the third and final requirement was also satisfied in this case. Therefore, the testimony of Donald and Margie Shay was properly received at trial.

■ Rhoades' next contention is that the trial court erred when refusing to allow a defense witness to testify about activities of the victim which he had observed prior to the sexual molestation of the child by Rhoades. The witness, Tim Young, would have testified that P.S.B. had once walked in on him while he was using the outhouse; that P.S.B. had once put her hand on Young's crotch; and that Young had once seen P.S.B. wiping her hands as she was leaving the bedroom which she had shared with her father. Appellant argues that this testimony was relevant to rebut an inference suggested by the Commonwealth's evidence

that P.S.B. knew about the biological functions of the male penis as a result of her illicit contact with him. We disagree. That P.S.B. may have on one occasion observed a man urinating or had once touched a man's crotch was completely unrelated to the issues being tried. Similarly, that P.S.B. may have emerged from the bedroom which she shared with her father while wiping her hands falls far short of suggesting that her testimony in this case was the product of having shared a room with her father. Nor, as Rhoades contends, does it corroborate other evidence tending to suggest that P.S.B. had been sexually abused by her father.[3] That a young girl emerges from a bedroom wiping her hands does not suggest sexual activity. The trial court did not err by excluding such testimony.

Appellant also contends that the trial court erred when it (1) refused to permit him to testify that he had wanted to submit to a medical test, known as a penile tumescence, to confirm that he was impotent; and (2) disallowed testimony by the clerk of courts that Rhoades had filed a petition for an order requiring the Commonwealth to pay for the medical test and that the petition had been denied by the court. Appellant's first contention is without factual support. Rhoades was in fact permitted to testify before the jury that he had wanted to submit to the medical test but that the test had not been conducted because of his inability to pay the cost thereof.

The testimony of the clerk of courts was properly excluded. "An accused has a fundamental right to present defensive evidence so long as such evidence is relevant and not excluded by an established evidentiary rule." *Commonwealth v. Greene*, 469 Pa. 399, 405, 366 A.2d 234, 237 (1976), citing *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038,

---

**3.** This evidence consisted of testimony that P.S.B. and her father had shared the same bedroom (although two separate beds were contained therein) and that in the fall of 1983 a complaint had been filed with the Centre County Department of Children and Youth Services alleging that P.S.B.'s father had sexually abused her. This complaint, however, had been determined to be unfounded by Children and Youth Services.

35 L.Ed.2d 297 (1973); *Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). "Evidence is relevant if it in some degree advances the inquiry, making the desired inference more probable than not.... The admission of such evidence rests with the discretion of the trial court." *Commonwealth v. Russell,* 326 Pa.Super. 346, 349, 473 A.2d 1383, 1384 (1984). See: *Commonwealth v. Brown,* 489 Pa. 285, 303, 414 A.2d 70, 79 (1980); *Commonwealth v. Walzack,* 468 Pa. 210, 218, 360 A.2d 914, 918 (1976).

■ Appellant's purpose in offering the clerk's testimony was to persuade the jury that it was more probable than not that he was, in fact, impotent and, therefore, incapable of assaulting P.S.B. sexually. The desired inference, however, was a non sequitur. Merely because Rhoades may have desired to submit to the test did not tend to show that the tests would have shown impotency. Because the proffered testimony was irrelevant, it was properly disallowed by the trial court.

Section 9781 of the Sentencing Code provides, in pertinent part, as follows:

(a) **Right to appeal.**—The defendant or the Commonwealth may appeal as of right the legality of the sentence.

(b) **Allowance of appeal.**—The defendant or the Commonwealth may file a petition for allowance of appeal of the discretionary aspects of a sentence for a felony or a misdemeanor to the appellate court that has initial jurisdiction for such appeals. Allowance of appeal may be granted at the discretion of the appellate court where it appears that there is a substantial question that the sentence imposed is not appropriate under this chapter.

42 Pa.C.S. § 9781.

In *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987), the Supreme Court reviewed these provisions and concluded:

It is apparent [from a review of the Sentencing Code] that the legislature has vested broad discretion in the trial court to impose a sentence appropriate to each case which comes before it. It is also apparent that the legislature has provided a thorough, though not exhaustive, outline of considerations to focus the court's deliberations in choosing an appropriate sentence. It is only where a party can articulate reasons why a particular sentence raises doubts that this scheme as a whole has been compromised that the appellate court should review the manner in which the trial court exercised its discretion.

*Id.*, 513 Pa. at 515, 522 A.2d at 20. The Supreme Court further held that it had been error for the Superior Court to consider the merits of a challenge to the discretionary aspects of a sentence where the appellant failed to comply with the mandates of Pa.R.A.P. 2119(f), which provides that

[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

See: *Commonwealth v. Tuladziecki, supra*, 513 Pa. at 511, 522 A.2d at 19.

■ In the instant case, Rhoades does not challenge the legality of the sentence imposed. He contends, rather, that the sentence was excessive under the factual circumstances and was outside the range of sentences suggested by the sentencing guidelines. This challenge is to the discretionary aspects of the sentence. However, he has failed to set forth in his brief a concise statement of the reasons relied upon to persuade this Court to allow a review of the discretionary aspects of the sentence. Pa.R.A.P. 2119(f). *Tuladziecki* teaches that under these circumstances we may not consider the merits of the sentencing issue.

Judgment of sentence affirmed.