J-A18013-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANTRON TALLEY :
:
Appellant : No. 256 WDA 2021

Appeal from the PCRA Order Entered February 17, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0001397-2014

BEFORE:  OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                **FILED:  NOVEMBER 30, 2021**

Appellant, Antron Talley, appeals *pro se* from the order entered on February 17, 2021, which denied his first petition filed under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The facts and procedural history of Appellant's case are as follows.  On April 18, 2017, a jury found Appellant guilty of assault by prisoner, two counts of aggravated assault, and one count of simple assault[1] stemming from a December 19, 2013 incident in which Appellant, an inmate, attacked Jason Arlotta, a correctional officer at the Allegheny County Jail ("ACJ").  Trial Court Opinion, 9/20/17, at 1 and 4.  Appellant represented himself at trial.  *Id.* at

---

[1]  18  Pa.C.S.A.  §§ 2703(a),  2702(a)(2),  2702(a)(3),  and  2701(a)(1), respectively.

1. On May 24, 2017, the trial court sentenced Appellant to an aggregate term of eight to 16 years of imprisonment with credit for time served, followed by an eight-year probationary sentence. *Id.* at 1-2. After the trial court denied Appellant's post-sentence motions, Appellant filed a timely appeal. *Id.* at 2. This Court affirmed Appellant's judgment of sentence on July 9, 2018. *See* ***Commonwealth v. Talley***, 2018 WL 3341922 (Pa. Super. 2018) (unpublished decision).

On October 12, 2018, Appellant filed a timely *pro se* PCRA petition, his first. He subsequently filed a *pro se* amended PCRA petition on January 18, 2019,[2] and supplemental amendments on February 13, 2019, June 27, 2019, August 9, 2019, March 2, 2020, and July 7, 2020. *See* PCRA Court Opinion, 2/17/21, at 1. The PCRA court granted Appellant leave to represent himself on February 1, 2019. *See* PCRA Court Order, 2/1/19. Within his amended PCRA petition and supplements thereto, Appellant raised a plethora of

---

[2] After Appellant filed his initial PCRA petition, the PCRA court appointed Scott Coffey, Esquire, to represent Appellant in PCRA proceedings. *See* Trial Court Order, 10/30/18. Appellant thereafter filed a *pro se* motion to waive counsel on December 18, 2018. In addition, Appellant filed a *pro se* amended PCRA petition on January 18, 2019, while still represented by counsel. *See* Trial Court Docket Entries, 12/18/18 and 1/18/19. Despite our prohibition against hybrid representation, our caselaw provides an exception in the case of *pro se* filings requesting appointment of new counsel or leave to self-represent. *See* ***Commonwealth v. Williams***, 151 A.3d 621, 623 (Pa. Super. 2016). Therefore, the PCRA court properly considered Appellant's *pro se* motion to waive counsel. Moreover, because the PCRA court granted Appellant's motion on February 1, 2019 – before it adjudicated his claims for collateral relief raised in the January 18, 2019 petition – we shall refrain from treating the January 2019 amended petition as a legal nullity.

unrefined allegations. In scheduling an evidentiary hearing, the PCRA court narrowed the focus of Appellant's claims:

> Following a discussion with the parties on September 19, 2019, the court issued an [o]rder on September 20, 2019, limiting the scope of the PCRA [h]earing to the [Appellant's] claim of after-discovered evidence and his claims alleging ineffective assistance of counsel ("IAC") only as the IAC claims related to his assertion of a violation of his right to a speedy trial.

PCRA Court Opinion, 2/17/21, at 2 (footnote omitted). The PCRA court further clarified:

> With respect to the IAC claims, the [Appellant] contends that he received ineffective assistance from each of his trial attorneys due to the number of postponements that they had requested, which he argues resulted in a violation of his speedy trial rights under Pa.R.Crim.P. 600. Relatedly, the [Appellant] alleged that his appellate counsel provided ineffective assistance when she opted to abandon the speedy trial issue in her appellate brief before [this Court] following the issuance of the [trial court's 1925(a) opinion filed on September 20, 2017].
>
> With respect to the [Appellant's] after-discovered evidence claim, the [Appellant] contends that two (2) of his fellow inmates at [ACJ] witnessed the incident that led to his criminal charges and conviction and that their testimony would establish that the assault did not unfold in the manner testified to by the victim at trial. A PCRA [h]earing on these claims was held on November 17, 2020.

*Id.* at 2-3 (citations to the record and footnote omitted).

At several points throughout the PCRA proceedings, Appellant moved, either in written or oral form, for the PCRA Court, the Honorable Judge Beth A. Lazzara, to recuse herself. *See* Petitions for Recusal filed 8/29/19 and 9/30/19; N.T. Hearing, 9/19/19, at 11, 14-15. The PCRA court denied Appellant's motions. At the conclusion of an evidentiary hearing on November

17, 2020, the PCRA court expressly permitted Appellant and the Commonwealth to submit post-hearing memoranda. PCRA Court Opinion, 2/17/21, at 1. On February 17, 2021, the PCRA court denied, by opinion and order, Appellant's PCRA petition. *Id.* This appeal followed.[3]

Appellant, proceeding *pro se*,[4] raises 26 issues before this Court. *See* Appellant's Brief at 6-9. Appellant takes issue with the PCRA court's denial of

_____

[3] Appellant filed a timely *pro se* notice of appeal on February 22, 2021 and subsequently, on March 1, 2021, filed an unsolicited concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On April 14, 2021, the PCRA court entered an order pursuant to Pa.R.A.P. 1925(b) and allowed Appellant time to file amendments to his March 1, 2021 concise statement. Appellant timely filed his amended concise statement on April 19, 2021. Within his two concise statements, Appellant raised "a total of 31 allegations of error on appeal relating to the denial of his PCRA petition." PCRA Court Opinion, 4/28/21, at 1. The PCRA Court issued an order on April 28, 2021 adopting its February 17, 2021 opinion as its 1925(a) opinion.

[4] On March 31, 2021, this Court issued a *per curiam* order directing the PCRA court to confirm that it conducted a *Grazier* hearing to determine if Appellant's requests to proceed *pro se* were knowing, voluntary, and intelligent. *See Per Curiam* Order, 3/31/21. The PCRA court filed a response with this Court on April 16, 2021, wherein it included a copy of the transcripts of Appellant's January 31, 2019 *Grazier* hearing. *See* PCRA Court Response, 4/16/21. Moreover, the PCRA court issued an order on March 15, 2021, directing Appellant to confirm in writing whether he intends to continue to represent himself in the present appeal. On March 25, 2021, Appellant responded in the affirmative. The PCRA court noted its understanding that Appellant "has been adamant about representing himself for years" at both the state and federal levels. *Id.* It concluded:

> In light of the clear waiver colloquy that was executed at the *Grazier* [h]earing on January 31, 2019, [Appellant's] recent stated intent to continue his *pro se* representation, and [the PCRA] court's familiarity with [Appellant] over the last several years, the [PCRA] court is confident that [Appellant] wishes to continue

*(Footnote Continued Next Page)*

- 4 -

his motion to recuse. *Id.* at 9. He further contests the PCRA court's rejection of his ineffective assistance of trial and direct appellate counsel claims as they relate to an underlying violation of his right to a speedy trial and its rejection of his after-discovered evidence claim. *Id.* at 6-8. We will review these issues in succession. Appellant's remaining claims, numbers 11-20, 24, and 26, *see id.* at 7-9,[5] are waived as each involve freestanding allegations of trial court error that Appellant raised or could have raised before trial, at trial, or on appeal. *See* 42 Pa.C.S.A. § 9544(b) ("an issue is waived [for purposes of PCRA relief] if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state postconviction proceeding"). Consequently, Appellant is not entitled to relief on these claims and we will not discuss them further. *See* 42 Pa.C.S.A. § 9543(a)(3) (PCRA petitioner has burden to prove allegation of error has not

_____

representing himself in this appeal, that he fully understands all the rights and risks attendant to self-representation, and that no further waiver colloquy is necessary.

*Id.* Based on our review of the certified record, including the notes of testimony from Appellant's *Grazier* hearing, the PCRA court's order, Appellant's response, and the PCRA court's explanation to this Court, we are satisfied that Appellant knowingly, voluntarily, and intelligently waived his right to counsel in order to represent himself *pro se* throughout his PCRA proceedings before both the PCRA court and this Court.

[5] Appellant takes issue with the trial court's actions in granting continuances in his absence, amending Appellant's charges, allegedly participating in plea negotiations, and otherwise allegedly violating his self-representation and speedy trial rights. *See* Appellant's Brief at 7-9.

- 5 -

been waived); *see also Commonwealth v. Keaton*, 45 A.3d 1050, 1060 (Pa. 2012) (claims that could have been raised at trial or on direct appeal are waived). Thus, we turn to Appellant's three reviewable claims on appeal.

We review an order denying collateral relief to determine "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), *appeal denied*, 101 A.3d 785 (Pa. 2014).

A petitioner is eligible for relief under the PCRA if the petitioner pleads and proves by a preponderance of the evidence, *inter alia*, that his or her conviction or sentence resulted from one or more of the following:

> (i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) Deleted.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

42 Pa.C.S.A. § 9543(a)(2)(i-viii).

Regarding recusal, our Supreme Court has stated:

A party that seeks recusal of a judge bears the burden to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. [An appellate court] reviews a jurist's denial of a motion to recuse for abuse of discretion. In addition, [our Supreme Court has] concluded that, in general, it is preferable for the judge who presided at trial to preside over any post-conviction proceedings because his or her familiarity with the case will likely assist the proper administration of justice.

***Commonwealth v. Hutchinson***, 25 A.3d 277, 319 (Pa. 2011) (internal

citations and quotations omitted). We have further clarified our standard of

review:

[O]ur review of a trial court's denial of a motion to recuse is exceptionally deferential. We extend extreme deference to a trial

court's decision not to recuse. We recognize that our trial judges are honorable, fair[,] and competent, and[,] although we employ an abuse of discretion standard, we do so recognizing that the judge himself [or herself] is best qualified to gauge his [or her] ability to preside impartially. Hence, a trial judge should grant to motion to recuse only if a doubt exists as to his or her ability to preside impartially or if impartiality can be reasonably questioned.

*Interest of D.R.*, 216 A.3d 286, 292 (Pa. Super. 2019), *aff'd*, 232 A.3d 547 (Pa. 2020) (citation omitted).

Here, Appellant contends that Judge Lazzara "held [a] resentment, or harbored some type of ill-will or bias toward the Appellant" because he filed a complaint with the Judicial Conduct Board and "informed the federal court[] of her actions in a habeas corpus [action.]" Appellant's Brief at 22. In so arguing, Appellant fails to produce evidence establishing bias, prejudice, or unfairness on the part of the PCRA court judge that would raise a substantial doubt as to the jurist's ability to preside impartially. Moreover, most instances which Appellant cites as examples of Judge Lazzara's alleged ill-will or bias occurred within the context of Appellant's original trial proceedings. Thus, they do not support a recusal requested years later within his PCRA proceedings. *See Lomas v. Kravitz*, 170 A.3d 380, 390 (Pa. 2017) ("[i]in this Commonwealth, a party must seek recusal of a jurist at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse. If the party fails to present a motion to recuse at that time, then the party's recusal issue is time-barred and waived."). Plainly, Appellant simply disagrees with, and is dissatisfied with, the disposition of his

- 8 -

various motions and the outcome of his original trial and his collateral relief proceedings. Therefore, Appellant's recusal claim is without merit.

Finally, we conclude that the remaining reviewable claims presented on appeal, *to wit* trial and appellate counsel's alleged ineffectiveness and after-discovered evidence, lack merit. We have carefully reviewed the certified record, the submissions of the parties, and the Rule 1925(a) opinion issued by the PCRA court. Based upon our review, we conclude that the PCRA court adequately and accurately examined the remaining two claims raised in this appeal and that Appellant is not entitled to relief for the reasons expressed in the PCRA court's opinion.[6] Accordingly, we adopt the PCRA court's opinion as our own. The parties are directed to attach a copy of the PCRA court's opinion to all future filings pertaining to the disposition of this appeal.

Order affirmed. Jurisdiction relinquished.

---

[6] We add only that the PCRA court did not abuse its discretion in denying the instant petition without convening an evidentiary hearing to address **all** of Appellant's claims; rather, it correctly limited the scope of the evidentiary hearing to the two cognizable and non-waived issues that called for adjudication upon a fully developed record. *See Commonwealth v. Hand*, 252 A.3d 1159, 1165 (Pa. Super. 2021) (PCRA court may exercise its discretion and decline to conduct a hearing where collateral claims lack merit and enjoy no record support).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/30/2021

# Allegheny County - Department of Court Records
## Criminal Division - Filings Information

County caseID:CP-02-CR-0001397-2014 (OPINION)

**Case Description: COMMONWEALTH OF PENNSYLVANIA v. LNAME TALLEY**

**Official Docket Entry, Sort By Document Number Ascending**

| Document Number | Title/Entry | Filing Date |
|---|---|---|
| 1 | ORDER - DIRECTING DCR TO TRANSMIT THE RECORD TO SUPERIOR COURT | 04/28/2021 |

FILED

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

21 APR 28 AM 11:30 CRIMINAL DIVISION

DEPT. OF COURT RECORDS

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) | |
| | ) | ORIGINAL |
| v. | ) CC # 2014-1397 | Criminal Division Dept. Of Court Records Allegheny County, PA |
| | ) | |
| ANTRON TALLEY, | ) | |
| | ) | |
| *Pro Se* Defendant. | ) | |

**ORDER OF COURT**

**AND NOW, this 28th day of April, 2021, it is HEREBY ORDERED that the Clerk of Courts shall transmit the record on this matter to the Superior Court of Pennsylvania forthwith.** On March 1, 2021, the Defendant filed a timely Concise Statement of Matters Complained of on Appeal ("Concise Statement") pursuant to Pa.R.A.P. 1925(b). In that Concise Statement, the Defendant raised 26 challenges to this court's Order dated February 16, 2021, denying his Amended Petition under the Post-Conviction Relief Act. Pursuant to this court's Order dated April 14, 2021, the Defendant filed an Amended Concise Statement on April 19, 2021, and raised additional challenges to this court's order denying his PCRA petition, for a total of 31 allegations of error on appeal relating to the denial of his PCRA petition.

This court set forth its rationale for denying the Defendant's Amended PCRA petition in its February 16, 2021 Order denying PCRA relief. A copy of

1

this Order is attached hereto. This satisfies the requirements of Pa.R.A.P 1925(a)(1) that the court set forth its reasons for issuing the Order appealed from.[1]

A copy of this Order has been served upon the Defendant by regular mail and upon the Office of the District Attorney/Appeals Division, by interoffice mail.

BY THE COURT:

/s/ Beth A. Lazzara,  J.
BETH A. LAZZARA, JUDGE

---

[1] Pa. R.A.P. 1925(a)(1) provides in relevant part: " . . . upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, *if the reasons for the order do not already appear of record*, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or *shall specify in writing the place in the record where such reasons may be found*." (emphasis added).

2

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    ) CC No. 2014-1397
)
v.    )
)  **ORIGINAL**
ANTRON TALLEY,    )  Criminal Division
)  Dept. Of Court Records
*Pro Se* Defendant.    )  Allegheny County, PA

## **MEMORANDUM ORDER OF COURT**

AND NOW, to-wit, this 16th day of February, 2021, the court having given meaningful consideration to the Defendant's *pro se* Amended Post-Conviction Relief Act ("PCRA") Petition, filed on January 18, 2019,[1] as well as the supplemental amendments filed on February 13, 2019, June 27, 2019, August 9, 2019, March 2, 2020, July 7, 2020, and the court having further considered the Commonwealth's Answer filed on April 1, 2019, as well as the evidence and argument presented at the PCRA HEARING held on November 17, 2020, and the post-hearing submissions filed by the Defendant on November 30, 2020, and by the Commonwealth on December 11, 2020, the court **HEREBY DENIES** the Defendant's request for PCRA relief and offers the following rationale in support.

---

[1] The Defendant's PCRA petition is timely as it was filed on January 18, 2019, well within the one-year period following the date his judgment of sentence became final, which was September 24, 2018, after the Superior Court affirmed his conviction on August 24, 2018. The Defendant did not seek a Petition for Allowance of Appeal before the Pennsylvania Supreme Court.

## I.    SUMMARY OF PCRA CLAIMS

Following a discussion with the parties[2] on September 19, 2019, the court issued an Order on September 20, 2019, limiting the scope of the PCRA Hearing to the Defendant's claim of after-discovered evidence and his claims alleging ineffective assistance of counsel ("IAC") only as the IAC claims related to his assertion of a violation of his right to a speedy trial.

With respect to the IAC claims, the Defendant contends that he received ineffective assistance from each of his trial attorneys due to the number of postponements that they had requested, which he argues resulted in a violation of his speedy trial rights under Pa. R. Crim. P. 600. (*See* PCRA Hearing Transcript ("HT"), held 11/17/20, pp. 34-86). Relatedly, the Defendant alleged that his appellate counsel provided ineffective assistance when she opted to abandon the speedy trial issue in her appellate brief before the Superior Court of Pennsylvania following the issuance of the Trial Court Opinion ("TCO"). (HT, 87-91).

With respect to the Defendant's after-discovered evidence claim, the Defendant contends that two (2) of his fellow inmates at the Allegheny County Jail witnessed the incident that led to his criminal charges and conviction and that their testimony would establish that the assault did not unfold in the manner testified to

---

[2] The Defendant opted to represent himself in his pursuit of PCRA relief, just as he chose to represent himself at his jury trial.

2

by the victim at trial. A PCRA Hearing on these claims was held on November 17, 2020.[3]

## II.   SUMMARY OF HEARING TESTIMONY

### A. Ineffective Assistance of Counsel Claim

The witnesses who testified at the PCRA Hearing relative to the Defendant's IAC claim were defense attorneys Kathleen Miskovich Joseph Paletta, Randall McKinney, and Victoria Vidt, as well as Assistant District Attorney Ryan Kiray, who represented the Commonwealth at trial. (HT, pp. 35-91).

Attorney Miskovich testified that she entered her appearance on the Defendant's case on April 11, 2014, after she was appointed by the Public Defender's Office. (HT, pp. 36-38). She attended the pretrial conference, and discovery was ordered by the Public Defender's Office at the time her appearance was entered. (HT, p. 37). Attorney Miskovich testified that she spoke with the Defendant "multiple times" regarding trial strategy, both in person and via written correspondence. (HT, pp. 39-40, 47).

The first two (2) postponements during Attorney Miskovich's representation were secured by the Commonwealth on June 12, 2014, and counsel for the federal co-defendant on August 19, 2014. (HT, pp. 41-42). Attorney Miskovich testified

---

[3] For a detailed recitation of the procedural history surrounding this entire PCRA proceeding, please refer to the court's Order issued on October 15, 2020.

3

that the defense postponement filed on November 4, 2014, was requested by the Defendant so that he could view the surveillance video. (HT, p. 42). She also recalled that the defense postponement on February 17, 2015, was filed with the Defendant's permission. (HT, p. 43). Attorney Miskovich testified that any defense postponement she filed during her representation would have been done with the Defendant's permission. (HT, pp. 43, 47).

Attorney Miskovich became aware of the Defendant's pending federal case at the pretrial conference from the Assistant District Attorney, which caused her to become concerned about the impact that a state conviction would have on the Defendant's federal sentence. (HT, pp. 46-48). Part of Attorney Miskovich's trial strategy was to avoid incurring a state conviction prior to the Defendant's federal sentencing. (HT, pp. 46-47).

Attorney Joseph Paletta's representation began on March 24, 2015. (HT, pp. 51-52, 59-60). One of the reasons he filed a postponement on May 12, 201,5 was because of the Defendant's pending federal case. (HT, pp. 52-54). Attorney Paletta explained his understanding of the impact that a state conviction obtained during a pending federal prosecution as follows:

> [t]he relevancy is that in Federal Court, if you have a conviction and sentence in a County Court during the pendency of a federal prosecution, your federal prior record score and therefore your potential penalty would be increased upon conviction of a criminal crime. Therefore, on your behalf, I postponed the case until after the federal prosecution was resolved so that you would not be facing a higher penalty in Federal Court.

4

(HT, pp. 52-53, 57-58). Attorney Paletta further testified that the May 2015 postponement also was taken in order to allow him additional time to prepare for a jury trial, since he had only had the case for less than two (2) months at that time. (HT, pp. 54, 59-61, 64). Attorney Paletta had no knowledge of the information contained in the Defendant's federal Presentence Investigation Report that was prepared on October 16, 2015, and amended on April 8, 2019, as he no longer represented the Defendant at that point. (HT, pp. 54-56, 69-70).

Attorney Randal McKinney was appointed to the case on August 26, 2015. (HT, pp. 69-70). On January 25, 2016, he filed his first postponement in order to have more time to prepare for a jury trial. (HT, pp. 69-70, 77). There was a court postponement on May 17, 2016. (HT, p. 73). On March 28, 2016, Attorney McKinney testified that he filed his first motion to withdraw from representation due to a breakdown in communication with the Defendant. (HT, p. 78). Given that Attorney McKinney was the third attorney on the case, the court denied the motion with the hope that the Defendant and Mr. McKinney could resolve their communication issues.

Attorney McKinney testified that the defense postponement on July 12, 2016 was filed in order to have more time for trial preparation. (HT, p. 78). He further testified that the defense postponement submitted on November 29, 2016 was filed due to the pending federal sentencing. (HT, pp. 76-77). In sum, Attorney McKinney testified that any postponements he sought were in furtherance of trial

5

preparation or to avoid an enhanced federal sentencing due to a state conviction. (TT, p. 80).

Assistant District Attorney Ryan Kiray testified that he became involved in the case in early 2017. (HT, p. 81). He had no knowledge of the rationale underlying any Commonwealth continuances that may have been filed from 2014-2016. (HT, pp. 82-85). Once he took over the case, Attorney Kiray was specifically instructed to avoid seeking postponements, and he was prepared to go to trial[4] at all times after the case was assigned to him. (HT, pp. 85-86).

Appellate Attorney Victoria Vidt with the Public Defender's Office handled the Defendant's direct appeal in May of 2017. (HT, p. 87). She testified that the Defendant was "upset" because he had not personally consented to the defense continuances and that he was adamant about pursuing a Rule 600 issue on appeal. (HT, pp. 87-88). Attorney Vidt included the Rule 600 issue in the Concise Statement because she "wanted the court to double check" her recollection regarding who sought each continuance. (HT, pp. 87-88). However, following the issuance of the TCO, Attorney Vidt chose to forego raising the Rule 600 issue in her appellate brief because she determined that "it was not going to be a winning issue on appeal." (HT, p. 88). Notwithstanding the Defendant's legal interpretation of the Rule 600 issue, she declined to raise the issue in the appellate brief because

---

[4] The Defendant represented himself at his jury trial that was held between April 13, 2017 and April 18, 2017. He was convicted on April 18, 2017. (*See* Trial Court Opinion ("TCO"), filed September 20, 2017, p. 1).

she determined that the issue lacked merit and that she had to abide by her duty to the court, which meant refraining from raising meritless issues. (HT, pp. 88-91).

## B. After-Discovered Evidence Claim

In support of his after-discovered evidence claim, the Defendant presented the testimony of two (2) individuals whom he claimed were Allegheny County Jail inmates at the time of the original incident giving rise to the criminal charges. (HT, pp. 9-33). Inmate Quashon Littlejohn testified that on December 19, 2013, the day of the incident, he was in his cell brushing his teeth when he "noticed that there was a CO doing a cell search where he was throwing things out of the cell." (HT, pp. 12, 21). Mr. Littlejohn had been "standing at the window watching what was going on" when he "noticed the inmate walk over to the cell and pick up a pair of reds" and ask "the CO, what are you doing with my stuff." (HT, pp. 12-13, 18). A disagreement ensued about whether the inmate – the Defendant – was permitted to have the items that the CO was trying to confiscate. (HT, p. 13). Mr. Littlejohn recalled that "the CO got a little irritated by what [the Defendant] said and told him to stand on the wall while he was trying to search the cell." (HT, p. 13).

Mr. Littlejohn then testified to the following sequence of events:

The inmate told him he was going to be found out. So the CO told him, no, stand on the wall. So he stood with his back against the wall. At first, the CO grabbed him by the arm and turned around. When he turned around, it looked like the inmate put his face on the wall. The CO took his right hand and shoved the inmate on the right side of his face and hit him a couple times. And it started with a scuffle, and they slipped on the things in front of the door and ended up inside the cell

7

in the back right-hand corner. *I noticed the CO strike the inmate a couple more times and put him in handcuffs. Then that's when all the other CO's ran in the cell.* There was a commotion. I couldn't see what was going on. I heard them say, oh, my God, dude, and they brought Mr. Talley out in handcuffs and put him in a blue chair. *At no time did I ever see Mr. Talley throw a punch or anything to that effect.*

(HT, pp. 13-14) (emphasis added).

Mr. Littlejohn confirmed that the testimony he provided was recounted in the affidavit he completed on November 28, 2018, some five (5) years after the incident. (HT, pp. 9-10, 14). He testified that the reason why he came forward with his observations nearly five (5) years after the incident was because he did not know the Defendant at the time of the incident, and he did not see him again until they were later housed in the same state correctional institution. (HT, p. 11). Mr. Littlejohn realized that he was incarcerated with the Defendant after they were engaged "in a lot [of] conversation" while Mr. Littlejohn was "asking for help on the computer." (HT, p. 11). Mr. Littlejohn further testified that he would have been willing to testify at the Defendant's trial but that no one ever contacted him about doing so. (HT, pp. 14-15). He testified that he was not being paid or coerced into providing this testimony. (HT, p. 15).

On cross-examination, Mr. Littlejohn testified twice more that he was able to see the CO Arlotta place the Defendant in handcuffs inside of the Defendant's cell, but he again denied seeing the Defendant throw any punches while inside of the cell. (HT, pp. 15, 20). Mr. Littlejohn testified that he never left his cell or opened

8

the door and that his only view would have been through his window. (HT, p. 20). He said that his cell was on a diagonal angle from the Defendant's cell, such that, if he was standing in his doorway, he would be able to "see the back right-hand corner of the cell where the tables are located . . . ." (HT, pp. 16, 23). Mr. Littlejohn also agreed that he would defer to the surveillance video if it depicted a different series of events than what he was able to recall. (HT, p. 16).

Inmate Marquis Williams, who originally was identified as an eyewitness to the incident on December 19, 2013, ultimately testified that he "didn't see the whole complete incident." (HT, p. 32). He testified that he was watching TV and "just seen like the commotion that was going on." (HT, p. 33). He then qualified that statement and testified that he "wouldn't actually call it [a] commotion, but it was an argument between the CO and an inmate." (HT, p. 33). He testified that he did not see anything that occurred after the argument. (HT, p. 33)

### III. STATEMENT OF THE LAW RELATING TO CLAIMS

When confronted with claims of ineffective assistance of counsel, our Supreme Court has explained the analysis to be undertaken as follows:

> We begin our analysis of these issues with the presumption that counsel is effective; the burden of proving otherwise rests with the petitioner. Accordingly, to prevail on his claims of ineffective assistance of counsel, Appellant must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) [the defendant] suffered prejudice because of counsel's action or inaction.

With regard to the second, i.e., the "reasonable basis" prong, we will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." To establish the third prong, Appellant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

Commonwealth v. Hutchinson, 25 A.3d 277, 285 (Pa. 2012) (internal citations omitted).

Turning to the requirements of establishing a successful after-discovered evidence claim pursuant 42 Pa. C.S.A. § 9543(a)(2)(vi), our Supreme Court has explained that:

"[W]here a petition is otherwise timely, to prevail on an after-discovered evidence claim for relief under subsection 9543(a)(2)(vi), a [defendant] must prove that (1) the exculpatory evidence has been discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; **and** (4) it would likely compel a different verdict.

Commonwealth v. Burton, 158 A.3d 618, 629 (Pa. 2017) (citations omitted) (emphasis added). "Failure to satisfy any one prong is fatal to the claim." Commonwealth v. Crumbley, 240 A.3d 180 (Pa. Super. 2020); See Commonwealth v. Solano, 129 A.3d 1156, 1180 (Pa. 2015) ("As this test is conjunctive, failure to establish one prong obviates the need to analyze the remaining ones.").

With respect to the third prong of the after-discovered evidence test, our appellate court has explained that, "[w]henever a party offers a witness to provide

10

evidence that contradicts other evidence previously given by another witness, it constitutes impeachment...." Commonwealth v. Weis, 416 Pa. Super. 623, 611 A.2d 1218, 1229 (1992).

Finally, in determining whether the after-discovered evidence would likely compel a different result, "a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." Commonwealth v. Padillas, 997 A.2d 356, 365 (Pa. Super. 2010). As finder of fact, a "PCRA court judge may believe all, some, or none of a particular witness's testimony." Commonwealth v. Mitchell, 105 A.3d 1257, 1277 (Pa. 2014)

## IV. LEGAL ANALYSIS OF PCRA CLAIMS

After careful consideration of the Defendant's PCRA claims, which specifically included the court's consideration of the post-hearing submission[5] filed by the Defendant, the court finds that the Defendant has nevertheless failed to meet his burden of proving his entitlement to PCRA relief on his IAC claims as well as his After-Discovered Evidence claim.

---

[5] The Commonwealth's argument regarding the inadmissibility of the Defendant's post-hearing "testimony" is well-taken. ("Commonwealth's Response to Petitioner's Summary of Proposed Testimony and Sworn Testimony Regarding Federal Indictment", filed on 12/11/20, pp. 2-5). However, the Defendant's *pro se* status and the interests of justice and judicial economy have led this court to consider the merits of the Defendant's post-hearing submission in deciding this PCRA petition.

11

## A. IAC Claims

With respect to his IAC claims, the court finds that the Defendant has failed to prove that the claims have arguable merit. The focus of Rule 600 is to ensure that the Commonwealth exercises due diligence in bringing the Defendant to trial without unnecessary delay. (See Comment to Pa. R. Crim. P. 600) (explaining that "the inquiry for a judge in determining whether there is a violation of the time periods in paragraph (A) is **whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence.**") (emphasis added).

Indeed, our Supreme Court has "stressed that Rule 600 'was never intended to be used as a device by which a defendant may escape responsibility for his actions.'" Commonwealth v. Barbour, 189 A.3d 944, 959 (Pa. 2018) (quoting Commonwealth v. Guldin, 463 A.2d 1011, 1014 (1983); see also Commonwealth v. Brightwell, 486 Pa. 401, 406 A.2d 503, 506 (1979) (Opinion in Support of Affirmance) ("While Rule [600] is a shield to protect defendants from undue procrastination in the commencement of proceedings against them, we refuse to over-extend the protections afforded by that Rule in a manner that would enable it to be used as a sword to allow the accused to benefit from his own misconduct.")).

As this court explained in detail in its TCO, there was no underlying Rule 600 violation in this case. (See TCO, pp. 8-19). Indeed, the pretrial delay in this

12

case was not the result of any failure on the part of the Commonwealth to exercise due diligence in bringing the Defendant to trial. Rather, the majority of the pretrial delay was a product of defense postponements that were secured in order to provide more time for trial preparation and to avoid potential enhancements in the Defendant's federal sentence. (*See* TCO, pp. 14-15). The defense postponements constituted excludable time under the speedy trial calculation and, thus, did not trigger a Rule 600 violation. (*See* TCO, pp. 9-15); Commonwealth v. Watson, 140 A.3d 696, 698-99 (Pa. Super. 2016) (explaining Rule 600 and noting that defense continuances could not be attributed to the Commonwealth and properly constituted excludable time).

The Defendant appears to contend that his trial attorneys were ineffective for filing postponements because the postponements were allegedly filed without his approval. To the extent that the Defendant argues that his consent was required for the postponements to be valid, our appellate court has expressly rejected that contention. Indeed, the defendant in Commonwealth v. Walley, 396 A.2d 1280, 1283 (Pa. Super. 1978) asserted that his counsel "could not validly obtain continuances and waivers of [speedy trial] rights absent [his] knowing consent noted on the record." The Superior Court called his claim "patently frivolous" and offered the following rationale on the matter:

> We have held inferentially that counsel may request continuances that postpone trial commencement beyond the 180-day[6] limit without

---

[6] Walley involved the prior speedy trial rule embodied in Rule 1100, which was later "amended and renumbered as Rule 600 on April 1, 2001." Barbour, *supra*, at 947, n.1 (Pa. 2018).

> the specific signed consent of his client ... **Continuances are a matter of sound trial strategy within the reasonable purview of counsel. To hold that counsel cannot unilaterally request continuances that delay the start of trial past the [speedy trial] limit would severely hamper his ability to effectuate trial strategy.**

Id. at 1283. (emphasis added).

The Superior Court has recently reaffirmed the notion that counsel does not need to obtain the Defendant's permission in order to seek trial continuances. *See* Watson, *supra*, at 699 ("[W]e observe that [the defendant] directs us to no authority, and we are aware of none, to support his contention that counsel must obtain a defendant's permission prior to requesting a continuance.") (citing Commonwealth v. Wells, 521 A.2d 1388, 1391–92 (1987) (holding trial counsel has authority to agree to a continuance without the defendant's knowledge and consent)).

Accordingly, trial counsel did not require the Defendant's consent in order to seek continuances in this case. Since the defense postponements constituted excludable time under Rule 600, there was no speedy trial violation in this case. Consequently, there is no arguable merit to the claim that trial counsel was ineffective for filing said postponements because they did not result in a Rule 600 violation. Nor is there arguable merit to the claim that appellate counsel was ineffective for failing to raise the Rule 600 issue on appeal, as "[c]ounsel will not be deemed ineffective for failing to raise a meritless claim." Commonwealth v. Spotz, 896 A.2d 1191, 1210 (Pa. 2006).

14

With respect to the second prong of the IAC test, the court finds that the Defendant cannot meet his burden of proving that his trial attorneys lacked a reasonable basis for their actions in submitting postponements. While each of his attorneys testified that certain postponements were filed in order to avoid what they believed would be an enhanced federal sentence if the state case resulted in a conviction prior to his federal sentencing, they also testified that postponements were filed to allow for trial preparation.

In his post-hearing submission filed on November 30, 2020, the Defendant attached a copy of his amended federal presentence report prepared on April 8, 2019, which showed that the inclusion of the state conviction did not ultimately affect his sentencing calculation because he was already designated under the highest criminal history category even without the inclusion of the state conviction. (*See* Exhibit 1 to the 11/30/20 filing, ¶¶ 42-43, 46, n. 11 & n. 13 (noting that the inclusion of the conviction did not affect his criminal history score)).

The fact that the Defendant's state court conviction did not ultimately affect his federal sentencing guideline calculation does not undermine counsel's belief that the conviction *could have* enhanced his federal sentence. Indeed, the United States Sentencing Guidelines § 4A1.2(a)(4) – "Definitions and Instructions for Computing Criminal History," provides that: "[w]here a defendant has been convicted of an offense, but not yet sentenced, such conviction shall be counted as if it constituted a prior sentence under § 4A1.1(c) if a sentence resulting from

15

that conviction otherwise would be countable." A conviction on any of the Defendant's pending state charges would have been counted pursuant to the dictates of § 4A1.1(c). Accordingly, it was entirely reasonable for trial counsel to believe that a conviction in the Defendant's state case could theoretically impact the federal sentencing calculation. The fact that it ultimately did not does not invalidate their trial strategy.

To that end, the court notes that Attorney Miskovich and Attorney Paletta never even saw the Defendant's Federal Presentence Investigation Report because they were no longer representing him by the time the first report was prepared on October 29, 2015. (HT, pp. 59, 69). There is also no evidence that the Defendant ever showed Attorney McKinney his October 29, 2015 Presentence Report during the course of his representation. (TT, pp. 68-79). As such, none of his trial attorneys possessed any actual knowledge of the Defendant's federal guideline calculations, so they had every reason to believe that the conviction would enhance his federal sentence. Moreover, as noted previously, his attorneys also testified to a coexisting basis for the postponements, which was to allow more time for additional trial preparation, which is an entirely sound trial strategy.

As discussed earlier, it can be said that "counsel's chosen strategy lacked a reasonable basis only if [the defendant] proves that an alternative not chosen offered a potential for success substantially greater than the course actually

16

pursued." Hutchinson, *supra,* at 285. The Defendant has failed to prove that the chances of an acquittal would have been substantially greater if counsel had not submitted the contested postponements, especially given the fact that most of the assault was captured by surveillance video and recounted by compelling witness testimony at trial. Accordingly, the court finds that his trial attorneys had a reasonable strategy for the continuances, and the Defendant has failed to meet his burden of proving otherwise.

Ultimately, the fact remains that the Defendant cannot satisfy the final prejudice prong of the IAC test. Aside from being generally agitated by trial counsel's submission of postponements, the Defendant has never been able to articulate how he was negatively impacted by the defense postponements. The pretrial delay did not result in any documentary evidence being lost or destroyed, nor did it impact his ability to prepare and present his defense or any witness testimony. The delay did not result in the unnecessary loss of liberty since he was also detained on his federal charges at the same time. Accordingly, the Defendant has not proven by a preponderance of evidence that he was prejudiced by the defense postponements because he cannot "show that there is a reasonable probability that the outcome of the proceedings would have been different but for" the postponements. Hutchinson, *supra*, at 285. Therefore, his IAC claim must fail.

17

## B. After-Discovered Evidence Claim

The court finds that the testimony of Mr. Littlejohn does not warrant PCRA relief because it is not at all likely that his testimony would compel a different outcome at trial. Burton, *supra* at 629.

First, the court does not find Mr. Littlejohn's testimony to be credible, as it is materially inconsistent with the testimony presented at trial. For instance, Mr. Littlejohn claimed that CO Arlotta placed the Defendant in handcuffs while inside of the Defendant's cell, (HT, p. 14), but the evidence at trial established that it was two (2) other responding COs who eventually came into the cell, pulled the Defendant off of CO Arlotta and placed him in handcuffs. (TCO, p. 7).

Second, the court notes that there was no corroborating documentation presented to show that Mr. Littlejohn was actually incarcerated at the Allegheny County Jail on the incident date. However, even if he was present on the incident date, Mr. Littlejohn did not have a complete and unobstructed view of the Defendant's cell, as he confirmed that he could "only see the back right-hand corner" of the Defendant's cell. (HT, pp.16, 23). He later clarified that the only part of the cell he could see was "the wall and the bed," and he conceded that he would trust the surveillance video over his own recollection. (HT, pp. 24-25).

18

Third, Mr. Littlejohn's testimony that the Defendant did not strike or punch

CO Arlotta completely fails to account for the CO's injuries, which were *substantial*.

As this court recounted in its TCO:

Once they were inside of the cell, and away from the surveillance cameras, **the Defendant punched CO Arlotta in the face, the side of his head, and his left eye. (TT, pp. 81, 109, 119, 121-22, 163, 202). The Defendant's punches were so forceful that CO Arlotta's head was split open, and he suffered a concussion. (TT, pp. 81, 202). Blood began running down the side of CO Arlotta's head, and he became "woozy." (TT, p. 82). He also felt pain in his shoulder as he was being attacked.** (TT, p. 83). Despite his injuries, CO Arlotta regained his footing and was able to somewhat restrain the Defendant in the back of the cell until assistance arrived. (TT, pp. 82, 130). However, the Defendant was "totally out of control" and was still striking CO Arlotta while CO Arlotta was subduing him. (TT, pp. 147, 153).

Despite his attempts, CO Arlotta was unable to gain full control of the situation until Correctional Officers Parkinson and Hanley responded to the incident. (TT, pp. 83-84, 92, 139, 145-46, 172). When they arrived in the cell, they observed "**blood all over the place,**" and their "main goal at that point was to get Officer Arlotta out of t[he cell] because he was obviously injured." (TT, pp. 147, 150-52). The Defendant continued to resist against the officers, and it took the strength of both officers to pull the Defendant off of CO Arlotta and place him in handcuffs. (TT, pp. 84, 131, 146, 148, 156, 172). **CO Arlotta emerged from the cell with his face covered in blood. (TT, pp. 92-93, 149, 164). The Defendant, on the other hand, did not have any observable marks or injuries on his body following the attack.** (TT, pp. 164, 201-02).

The majority of the Defendant's assault on CO Arlotta was captured on surveillance video taken from the POD. (TT, pp. 88-92). Although CO Arlotta could not recall how many times that he was hit, he estimated that he was inside of the cell for approximately a minute and a half before help arrived. (TT, p. 82). CO Arlotta stated that he was frightened during the attack, and he felt that he was fighting for his life. (TT, pp. 82, 92, 121). **He sought medical attention at Mercy Hospital following the attack, and it was determined that he had suffered a broken shoulder, a concussion, and a laceration above his left eye.** (TT, pp. 84, 119, 163).

In the week following the attack, **CO Arlotta experienced headaches, dizziness, and pain in his shoulder, which all**

impaired his ability to not only do his job, but also to engage in other activities in his daily life, like sleeping and driving. (TT, pp. 85-86). **He initially was placed on light duty at work for a week. Unfortunately, after he was diagnosed with a concussion, he was unable to work at all for four (4) months. (TT, pp. 84-85). When he finally returned to work, he was placed on light duty for another six (6) months. He was also given permission to leave work as needed during that light-duty period if symptoms from his concussion surfaced. (TT, pp. 85, 87). CO Arlotta was required to call off of work and leave work early during his six (6) month period of light duty work. It should also be noted that the attack left him with a scar above his left eye. (TT, pp. 88, 122).**

(TCO, pp. 6-8) (emphasis added).

Accordingly, Mr. Littlejohn's testimony fails the after-discovered evidence test because the Defendant cannot prove that Mr. Litttlejohn's testimony would likely compel an acquittal at trial. The testimony of Mr. Williams also fails the test since his hearing testimony merely established that he overheard an argument but did not observe anything that followed.

Thus, for all the reasons just stated, the court finds that the Defendant is not entitled to PCRA relief. **The Defendant is hereby put on notice that he has the right to file an appeal to the Pennsylvania Superior Court within thirty (30) days from the date of this Order.**

BY THE COURT:

/s/ Beth A. Lazzara_____, J.
BETH A. LAZZARA, JUDGE

20